## Patterson *v.* Alabama Fuel & Iron Co.

### *Injury to Invitee.*

(Decided October 21, 1915.    Rehearing denied November 18, 1915.
69 South. 952.)

1. *Mines and Minerals; Invitee; Duty.*—Where a mine owner invites another to assist in driving an entry in his mine, and the invitee is injured by reason of a dangerous condition in the mine, the mine owner is liable only in the event that the invitee has the right to occupy the place where his injury occurred and the danger was such that the mine owner might reasonably have foreseen his injury.

2. *Same.*—Where a mine owner knew of the custom of an invitee to occupy an air shaft and acquiesced therein, the mine owner is liable for injuries resulting from dangers therein.

3. *Same; Negligence; Evidence.*—The evidence examined and held insufficient to show negligence of the mine owner in keeping a defectively insulated electric cable in an air shaft in which deceased was not authorized to go.

4. *Same; Independent Contractor; Injury to Servant of.*—Where a contractor driving a shaft in a mine was not authorized to use the air shaft, and he ordered one of his servants into the air shaft, such servant had no additional rights against the owner.

5. *Same; Violation of Statute.*—Where the cable was in the air shaft which the independent contractor and his servants were not authorized to use, recovery by a servant of such contractor against

[Patterson v. Alabama Fuel & Iron Co.]

a mine owner cannot be based on the owner's violation of section 100, Rule 12, Acts 1911, p. 535, relating to electric cables.

6. *Trial; Directing Verdict.*—Where there is no evidence to support a cause of action, it is proper to direct a verdict for defendant, and in such a case it is not error to direct the jury to find the verdict without leaving their box.

7. *Same; Reception of Evidence; Reopening Case.*—When both parties have closed, the reopening of the case rests in the discretion of the trial court.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by Nettie Patterson, as administratrix, against the Alabama Fuel & Iron Company, for damages for the death of her intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

Plaintiff's intestate was an employee of one Richardson, who had contracted with defendant company to drive a certain heading and an air course in defendant's mine. The mine consisted of a main slope, and the usual air course running parallel with it, and separated by a wall of some feet in thickness. Richardson's heading left the main slope at right angles, pierced the main-air course, and continued for 100 feet or more with a parallel air course of its own. The main air course is excavated and used solely for the circulation of air, and as a conduit for the electric cable which ran along its floor and supplied the power for the mine. Its surface was unfinished and rough, and it was only about 4½ feet in height. At the point where it was pierced and crossed by the heading, the cable was raised and supported by a post on each side and carried over along the roof of the heading, which was a little over 5 feet high, and 5 or 6 feet wide. After leaving these posts, the cable dropped to the floor of the air course again. The intestate had been working near the face of the heading and was seen to back towards its entrance, and

in a few minutes was heard to cry out and those near by hurried to him, and found him lying on the floor of the main air course at a distance estimated at from 4 or 5 or 10 or 15 feet below the lower rib or side of the heading, grasping the cable in one hand. He died shortly afterwards, and it was found that the cable was spliced at the place at which intestate was killed, and that the splice was partly bare of insulation. No one saw intestate enter the air course, and no explanation is afforded by the evidence as to why he did so, except as may be inferred from the fact that his supply of blasting powder was afterwards found in the air course about 10 or 12 feet below the point where he was killed. The powder used by Richardson and his workmen for this heading was regularly kept in a powder box some distance up the main slope. It appears that these workmen often kept their dinner buckets at the corner post where the heading intersected with the main air course, and ate their dinner there, and waited there when shots were fired in the heading; but they never went into the air course for any purpose, and they had no duties requiring them to enter.

The complaint is in several counts, but it is only necessary to set out the gravamen of counts 3 and 5; which are as follows: (3) That defendant was operating a coal mine in Shelby county, and plaintiff's intestate was in said mine by invitation of defendant, but not as an employee of defendant, and while therein, as aforesaid, came in contact with a wire charged with more than 480 volts of electricity, alternating current, which said wire was not adequately insulated to minimize the danger of shock, and as a proximate consequence thereof, so shocked by said electric current was plaintiff's intestate that he died. Plaintiff alleges that all her dam-

[Patterson v. Alabama Fuel & Iron Co.]

ages and the death of her said intestate were proximately caused by reason of defendant using said wires so charged with electricity in said mine, without having been adequately insulated to minimize the danger of shock.

(5) Same as 3 except that it is alleged that plaintiff's injuries and damages and the death of her said intestate was proximately caused by reason of the negligence of defendant in negligently failing to have and maintain said mine in a reasonably safe condition on the occasion aforesaid.

The plea was the general issue with leave to give in evidence any matter of special defense. At the end of the trial the court gave the general affirmative charge for defendant at its request.

ALLEN, BELL & SADLER, for appellant.

PERCY, BENNERS & BURR, and THOMAS W. PALMER, JR., for appellee.

SOMERVILE, J.—The principles of law which fix the liability of the owner of premises for injuries suffered thereon by one who was there by the invitation of the owner are well settled by numerous authorities.

(1, 2) When a mine owner invites a second person to assist in driving an entry and mining coal therein, and the latter is injured by reason of a dangerous condition existing at any place in the mine, to support a recovery against the owner therefor: (1) The circumstances must be such as to justify legal right, derived from the owner, to occupy the place where his injury occurred; and (2) it must be apparent to the owner, considered as a man of ordinary powers of observation, that the position likely to be assumed by the second person in

the exercise of the right so acquired with respect to the owner himself or some physical agency which was under his control at the time, is such that the second person will be likely to suffer injury if the owner does not take the precautions to prevent that injury which would occur to a prudent man as being appropriate. —*Lookout Mt. Co. v. Lea,* 144 Ala. 169, 175, 39 South. 1017. The owner's duty to take such precautions is co-extensive with the premises to be used, but it is not limited to the immediate locality where the contemplated work is to be done. Manifestly, it extends to every part of the premises, and every instrumentality thereon, which may be visited or used by the workman for a purpose incidental and reasonably adapted to, or associated with, the accomplishment of the purpose for which the invitation was given.—*S. S. St. & I. C. v. Tilson,* 141 Ala. 152, 37 South. 427; *Ala. S. & W. Co. v. Clements,* 146 Ala. 259, 40 South. 971. And even when this is not the case, the custom of the workman, or his fellow workmen, may, if long continued and acquiesced in by the owner, amount to an implied invitation to do the act or be at the place in question.—29 Cyc. 457 (v), and cases cited.

(3) The evidence in the instant case, even that offered for the plaintiff excludes every inferential element upon which any breach of duty by the defendant to the intestate could be grounded. The air course in which the intestate was killed was but a rough passageway for the circulation of the outer air, and it was otherwise used only as a conduit for the power cable. That it was neither adapted nor designed for any other use must have been clearly apparent to any man of even the least experience and intelligence, and the intestate was a miner of long ex-

perience. Its very use and condition was a sufficient warning to him not to enter, and defendant was under no duty to keep him out by guard rails or posted warnings. His employment by a contractor to mine coal in the heading could not by any reasonable association of ideas, have suggested to defendant the likelihood of the intestate's entrance into the air course for any legitimate purpose incidental to his occupation. It cannot be contended that his presence at the place in question was either for convenience or by necessity, so far as his work was concerned. The only possible explanation of it is that he had stored his powder in the air course, and knowing that the mine inspector was inspecting the mine in that immediate vicinity, he hurried in to further conceal or remove the powder to prevent its discovery; this in view of the statutory requirement (Gen. Sess. Acts, 1911, p. 530, §§ 84, 85) that powder in mines should be kept in locked wooden boxes not nearer than 100 feet to any working place, and the fact that intestate's employer kept a box for that purpose at a place on the main slope. If this be a tenable assumption, as we think it is, it is of course true that the intestate's violation of the law would not necessarily prevent a recovery for the proximate negligence of defendant. But the fact that such use of the air course by the intestate would be a violation of the law would, of itself suffice to remove it from the contemplation of defendant as a likely or reasonable act incidental to the intestate's employment. This assumes, of course, that defendant did not know that the air course was being used for such a purpose, and did not, by acquiescence, impliedly invite it; and nothing in the evidence has the remotest tendency to suggest such knowledge or acquiescence, nor, indeed, that any one else ever used it for

any purpose. The plaintiff's own witness, one Williams, testified: "We didn't use that place at all in our work, where Mr. Patterson was found. We could not use it and would not do it. * * * I do not know what Mr. Patterson was doing down there at the time he got hurt. He came by me in a big rush; I was on the side track. The powder box was on the slope somewhere. We had a lock box we were supposed to keep the powder in. About the time I saw him going down there in a big rush, the mine inspector was in there. * * * I am the one that found, after Mr. Patterson died, his powder hidden away down there in this slope or air course."

(4) It is suggested that perhaps this employer, Richardson, sent the intestate into the air course. If so, Richardson might be liable himself, but he could not thereby extend either the duty or the liability of this defendant; for Richardson was not authorized to use the air course any more than was the intestate.

(5) It is urged that defendant's failure to keep the cable properly insulated was a violation of rule 12, § 100, of the Mining Act of April 18, 1911 (Gen. Acts 1911, pp. 530, 535), and hence, this being negligence per se, plaintiff shows a right to recover. Conceding, for the argument, that the cited regulation applies to a cable in an unused section of an air course such as this, it is clear that its violation would be a breach of duty only to those persons who were, when injured thereby, rightfully present at the place of contact and danger, and in the exercise of their legal rights.—9 Cyc. 438, and cases cited in note 62.

(6) The trial court did not err in giving the general affirmative charge for the defendant, as requested in writing.

Where there is no evidence to support a cause of action, the burden of proving which is upon the plaintiff,

the trial judge should, upon request of the defendant, direct a verdict for the d'efendant without hypothesis as to believing the evidence, since there is nothing for the jury to believe.—*L. & N. R. R. Co. v. Perkins,* 152 Ala. 133, 139, 44 South. 602. This being the situation in this case, the trial judge committed no error prejudicial to plaintiff in requiring the jury to sign the verdict without retiring from the jury box, although plaintiff's counsel objected thereto and requested that the jury be sent out. See *Tobler v. P. M. & F. C.,* 166 Ala. 482, 485, 52 South. 86.

(7) After the case had been closed on both sides, the reopening of the evidence by plaintiff was a matter within the unrevisable discretion of the trial court, and its denial cannot be a ground for the reversal of the judgment.—*Morrissett v. Wood,* 123 Ala. 384, 26 South. 307, 82 Am. St. Rep. 127; *Chandler v. Higgins,* 156 Ala. 511, 47 South. 284.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.