181 So. 283

**ALABAMA POWER CO. v. OWENS.**

**4 Div. 26.**

Supreme Court of Alabama.

May 12, 1938.

E. C. Glover, of Abbeville, J. N. Mullins, of Dothan, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

98

Halstead & Smith, of Headland, and Martin & Jackson, of Dothan, for appellee.

BOULDIN, Justice.

Count A of the complaint, on which the trial was had, charged that defendant, a public utility, was engaged in furnishing electrical energy for domestic purposes to residences in Abbeville, that plaintiff's intestate was a customer, that it was the duty of defendant to furnish the home of the deceased for lighting purposes electrical current of approximately 110 volts, and that defendant breached said duty in that, through its servants or employees, acting within the scope of employment, defendant negligently furnished to plaintiff's intestate for lighting his home a current of electricity far in excess of 110 volts and greatly dangerous to human life, and as a proximate result of said negligence plaintiff's intestate was killed.

This count meets all the requirements of the well settled rule that the duty of care being shown a general averment of negligence is sufficient. Where the duty of care depends on the place where the injury was received, as in American Ry. Express Co. et al. v. Reid, 216 Ala. 479, 113 So. 507, the averment of place is one of the elements disclosing such duty. Here, the averments sufficiently disclose that the deceased came in contact with this dangerous current furnished to his home.

The specific location in his home, and the details of the fatal contact, were matters of evidence. Moreover, the fact that this contact was in his home, and this was known to the local management at the time is without dispute in the evidence.

There was no error to reverse in overruling demurrers to count A.

The evidence disclosed that plaintiff's intestate came to his death by electrocution. About one o'clock P.M. on December 24th, he carried home a radio, and proceeded to connect the extension cord attached to the radio with another extension cord which he attached to the drop-light fixture in the room. When he took in his right hand the connecting fixture at the end of the extension cord from the radio, and in his left hand the connecting fixture on the extension cord from the drop-light, in order to connect the two, he received the fatal electric shock.

The plaintiff introduced evidence along the usual lines in such cases tending to show

a current of 110 to 120 volts for lighting purposes will not kill an adult person, at least under ordinary conditions, as well as evidence of burns said by expert witnesses to indicate a higher voltage. Other evidence from witnesses and textwriters tended to show that under some conditions fatalities from such current do sometimes occur.

There was evidence tending to show no shock from attaching the fixture to the drop-light, the turning on of the light bulb just before the accident, the use of current soon after in heating pads for use in the attempt to resuscitate the deceased, and for lighting purposes, with other evidence of the effect of high voltage on such appliances; and still further evidence of the passing of the current through the body, closing a circuit through the two wires. In this connection evidence tended to show the wire was grounded at the radio through a short-circuit resulting from defective wiring of the radio.

Under the whole evidence, to be weighed and considered in all its tendencies, it was for the jury to find whether death resulted, under the special conditions, from the ordinary lighting current of 110 to 120 volts, or from a high voltage, more dangerous current, as charged in the complaint.

Any legal evidence, therefore, tending to show no such high voltage was passing over this light wire at the time, was relevant.

The evidence disclosed that the transformer of defendant, used to step down the current for this and neighboring residences was designed to reduce and send out over the wires to residences the usual lighting current, and over other wires a current of 220 to 240 volts for cooking and water heating purposes.

Whether this transformer was performing its proper functions stepping down the current going over the lighting wires to this residence was a material inquiry.

Touching the rulings on evidence offered by defendant on this line, we quote at length the statement of the trial Judge in passing upon the motion for new trial, as follows:

"In the trial of this case, Mr. Blakey, attorney for the defendant made the following statement to the court:

" 'We offer to show by this evidence (not by the witness then on the stand, who was defendant's witness, J. H. Carroll, see page 84 of transcript) that at seven P. M. of the day that Robert Owens met his death the transformer which was located across the street from the Robert Owens residence was performing its function which was to reduce the voltage of electricity from the primary voltage of approximately 23 or 2400 volts to approximately 120 volts, and that such transformer was in the same condition at that time that it was at the time Robert Owens met his death. We also offer to prove by this witness, J. H. Carroll, just how the volt meter which he used to test the voltage of the service wires which ran from the pole across the street from the Owens residence to the corner on the outside of the Owens house,—that is, to explain the workings of such volt meter to the jury and to explain to the jury just how such volt meter automatically records and makes a recording chart of the voltage of electricity carried over such service wires.'

"On objections from the plaintiff, the court refused to permit this testimony to be introduced. The court did not err in its ruling for this testimony offered contained TWO subject matters. One the functioning of the transformer 7 hours after Owens was killed with proof offered that the transformer was in the same condition as it was at the time Owens was killed by witness, J. H. Carroll, who could not know that the transformer was in the same condition for the reason that the proof in this case shows that the witness, J. H. Carroll had been with and working over plaintiff's intestate from the time he, Owens, was killed till the time he, the witness Carroll, inspected the transformer. The other subject matter being that of the workings of the volt meter, which was inadmissible under the former rulings of the court because the volt meter was not placed on the wires till about 7 hours after Owens was killed and it was not shown and no proof was tendered that the wires, appliances and other apparatuses used in conducting the current into the home, or to the home, rather, of plaintiff's intestate were in the same condition as they were at the time plaintiff's intestate was killed. The two subjects were not offered separately but were offered together, and certainly the Court did not err in sustaining plaintiff's objections to this tendered testimony as a whole."

In this ruling we are of opinion the court was in error. It was entirely proper to disclose both lines of evidence offered. Both

were admissible in proper order. That the appliances were in the same condition when inspection made as at the time of the accident was preliminary, and suggested merely the order in which proof should be offered. The witness, J. H. Carroll, was an expert witness. He was invited and went to the home of the deceased before the accident to do some work, on the stove; was called into the living room immediately after the accident, was in position to observe the functioning of the transformer through the hours he was working to revive the deceased. The court should not have assumed that he had no knowledge touching like conditions. That was a matter to be developed on examination and cross-examination touching such knowledge. But apart from this witness, the record disclosed an offer of evidence (not by this witness alone) that such transformer was in the same condition. There was evidence that any defect of this character was not self correcting. Whether Carroll, local manager, knew no other employee, had made any changes, was matter of inquiry. If not, other evidence was permissible.

The ruling of the court, and the reasons given by him, discloses error denying to defendant the production of evidence on a very material issue. Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16.

Thus far our discussion has proceeded on the assumption that proof of no change in conditions was necessary before admitting evidence of after conditions on the same day, some 6 to 7 hours after the injury.

Mr. Curtis states the rule thus:

"The condition of an electric appliance the next day after an accident, or within a few days thereafter, in the absence of evidence of a change in its condition, tends to prove its condition at the time of the occurrence under investigation, and evidence thereof is generally admissible."

Decisions from several states are cited in notes. Curtis, Law of Electricity, § 616. Conditions which are likely to remain the same until subsequent examination have been held admissible without such preliminary evidence in Alabama. Louisville & N. R. Co. v. Lowe, 158 Ala. 391, 48 So. 99; Jackson Lumber Co. v. Cunningham, Adm'r, 141 Ala. 206, 37 So. 445.

Conditions not inherently lasting, or not likely to continue the same after much lapse of time, are not admissible without evidence that they have remained unchanged. 14 Alabama Digest, Master and Servant, pp. 372, 373, ☞ 270 (6).

Manifestly, evidence of inspection and test by the volt meter at the time here in question, disclosing a high voltage, would have been admissible for plaintiff.

Logically, such evidence should be admissible on either side, unless there is reason for a different rule.

Where, as here, a fatal accident had occurred, which suggested prompt examination in the due performance of public duty to other customers, the local management was on the ground, and defendant, rather than plaintiff, had knowledge of what had been done in the interim, we are of opinion it was for defendant to offer evidence of no change in condition. But this it offered to do.

In support of the charge of negligence in conveying to the residence a current of dangerously high voltage, plaintiff offered evidence from a witness who qualified as an expert to the effect that a transformer may be defective or lacking in capacity to function properly under a heavy load; that an "upsurge," in voltage, may result temporarily. Following up this testimony, plaintiff offered evidence of the number of residences served from this transformer, and the number of light, heating, and other electric fixtures in each of these homes. Defendant interposed objections to this evidence, which were overruled. In the absence of further evidence touching the capacity of a transformer of this type, and of the service load at this time, one o'clock in the day time on Christmas Eve day, the evidence offered would justify no reasonable inference on this theory. The jury would be left to conjecture merely. The evidence being admissible, if followed up as indicated, further ruling should have been invoked when not followed up.

The argument in brief for appellee that the fatal injury may be laid to negligence of Mr. Carroll in causing the higher voltage in the kitchen to be communicated to the lighting wire is not supported by evidence; and such an issue was not presented by count A.

Since the judgment must be reversed for error pointed out, we deem it unnecessary to consider the elaborate argument touching the refusal of the affirmative charge, with hypothesis, or the related question touching

the application of the doctrine of res ipsa loquitur to the case made by this record.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.