48 So.2d 231

**ALABAMA POWER CO. v. BERRY.**

**6 Div. 959.**

Supreme Court of Alabama.

Oct. 12, 1950.

J. A. Posey, of Haleyville, and Martin, Turner & McWhorter and J. C. Blakey, of Birmingham, for appellant.

Weaver & Johnson, of Haleyville, for appellee.

SIMPSON, Justice.

The judgment here reviewed is one awarding damages to S. L. Berry, a minor who sues by his father as next friend, for serious and painful injuries alleged to have been caused by accidentally and unknowingly walking against or stepping upon a wire which was dangling or hanging down from defendant's high-voltage electric power transmission line, while he was cutting corn tops in his father's cornfield. Suit was filed some six years after the alleged occurrence.

The refusal to the defendant of the affirmative charge constitutes the vital assignment of error and is the question of primary importance.

Short of this principal question are two preliminary propositions, regarded as untenable, which will be disposed of first; viz., whether the transcript of the evidence should be stricken on motion of appellee and whether the count was subject to the grounds of demurrer interposed.

■ The appellee moves to strike the transcript because not filed with the clerk within ninety days after the date of trial or the ruling on the motion for a new trial, as required by Code 1940, Title 7, § 827(4). The delay in filing the transcript was occasioned by the serious illness of the trial judge after one continuance by him of the hearing on the motion for new trial, which rendered him unable to give the matter further attention, whereby, when he did recover and consider the motion, there had been a discontinuance. The local attorney of appellant thought he had an agreement with opposing counsel to avert such a discontinuance, but if so, the agreement was not in writing, as required, Circuit Court Rule 14, was therefore not binding, and the judge on the hearing of the motion properly declared that there had been a discontinuance and that he was without jurisdiction to rule on it. Stallings v. Clark, 218 Ala. 31, 117 So. 467; Richards v. Williams, 231 Ala. 450, 165 So. 820.

The transcript was filed the same day of this order of discontinuance and one argument against the motion to strike is that the statute only requires the filing of the transcript within ninety days after the date of the trial "or date of the trial court's *ruling* on motion for new trial" (emphasis supplied); that hence this statute was complied with since the court did *rule* on the motion by declaring a discontinuance. We are not prepared to say whether this section of the law abolishing bills of exceptions should be so construed or whether it should be construed as meaning "within ninety days from the day on which the judgment, or the order granting or refusing motion for new trial, was entered," as provided in the old law relative to bills of exceptions. § 822, Title 7, Code. Perhaps the latter, and if so, the transcript was filed too late. This uncertainty in the statute had heretofore escaped our notice, but we are not disposed to. undertake to rationalize the meaning of the section. We prefer to rest decision on Supreme Court Rule 48, Code 1940, Tit. 7 Appendix, adopted to implement the statute in an endeavor to make it workable. No objec-

tions as to the correctness of the transcript were filed and no material omissions or defects have been pointed out by appellee and the trial judge has approved it as correct. No lack of diligence on the part of appellant is shown or contended for by appellee, so under the rule we think the ends of justice require that we invoke our discretion and consider it. The motion to strike will, therefore, be overruled. Jones v. Mullin, 251 Ala. 501, 503, 38 So.2d 281; Morgan Plan Co. v. Accounts Supervision Co., 34 Ala.App. 457, 459, 41 So.2d 424, certiorari denied, 252 Ala. 473, 41 So.2d 428; Supreme Court Rule 48.

■ The other secondary matter relates to the sufficiency of the count (Count 1) on which recovery was rested as against the asserted grounds of demurrer. The argument is advanced that the count is defective in not sufficiently describing the place of injury or that the wire with which the appellee was alleged to have come in contact was owned or maintained by appellant or that the appellant caused the condition or that appellant had any notice or the length of notice of this dangerous condition. The argument is not well taken.

The place of accident is manifestly sufficiently alleged as being on the lands of the plaintiff's father near Sardis Church in Winston County. Alamaba Power Co. v. Owens, 236 Ala. 96, 181 So. 283; Blakeney v. Alabama Power Co., 222 Ala. 394, 133 So. 16.

And, the count meets the necessary requirements of the well-settled rule that the duty of care being shown, a general averment of negligence is sufficient. It is the duty of the electric company to use that degree of care commensurate with the risk and danger involved and the public has the right to assume that its high-voltage wires will not be negligently maintained. And if, as alleged, it did negligenty allow the wire to dangle and as a proximate result thereof the defendant was injured as described, liability would ensue. Birmingham Electric Co. v. Lawson, 239 Ala. 236, 194 So. 659; Alabama Power Co. v. Owens, supra; Montgomery Light & Water Co. v. Thombs, 204 Ala. 678, 87 So. 205. We hold the count good against the demurrer.

The vital question, as observed, relates to the ruling of the trial court in refusing the affirmative charge requested by the defendant. On a painstaking consideration of the record, in connection with a studious review of the governing authorities, the court has become convinced that it was error to refuse the charge.

■ The negligence charged in the count is that "the defendant negligently allowed a wire connected to one of its high-voltage electric power transmission lines to dangle or hang down from said high-voltage electric power transmission line to the ground, and said dangling wire was charged with high voltage electricity dangerous to the lives of human beings" and that plaintiff accidentally and unknowingly walked against or stepped upon said wire which resulted in his catalogued injuries and which were the proximate result of the negligence aforesaid.

There was but slight dispute in the material facts produced on trial: In the late afternoon between four and six o'clock September 1, 1942, plaintiff, then eleven years of age, and his brother, thirteen years of age, were cutting corn tops in their father's cornfield in a rural section of Winston County over which appellant's transmission line ran. The line had been there for many years and was suspended approximately fifty feet above the surface of the ground and, according to the testimony of the two boys, the only ones present when the accident occurred, they were cutting the corn about seventy-five feet up the hill from the point where the transmission line crossed the field. The plaintiff doesn't know what occurred nor did he recall touching or coming in contact with any wire and knew nothing until he regained consciousness in a hospital some time later. But his brother, Hollis, saw a blaze of fire come from the power line down to the ground where plaintiff was and then saw plaintiff lying on the ground. An inspection of the area later showed that scattered about indiscriminately all through the cornfield among the stalks and up to the proximity of the garden of the father of the plaintiff was a considerable amount of small fine wire which resembled in ap-

pearance the kind that goes in the coil of a T-model Ford. Although the two boys had been in the field all day, according to their testimony they did not see this wire and saw no wire hanging from the transmission line some seventy-five feet distant. No other witness was produced who had ever seen any of this scattered wire before the accident and there was no testimony as to how it got there, nor did anyone ever see any wire hanging from the transmission line at any time. Obviously, this foreign wire was not part of the defendant's equipment. There was testimony that some years previously the power company had an inspector who checked the line periodically, but no one had seen anyone inspecting the line recently. It is not shown whether the transmission line was insulated or uninsulated, nor was there any evidence that it was improperly located or constructed. The basis upon which negligence seems to be claimed was lack of reasonable inspection, although there was no proof as to what would or would not be a reasonable inspection of such a line. On the conclusion of the evidence for the plaintiff, both sides rested and the defendant requested the affirmative charge which, as stated, was refused.

We think it quite manifest that the count was not proven. It was not proven that a wire was "connected to or hanging or dangling" from the transmission line or that defendant negligently allowed it to so dangle or hang down or that any such negligence proximately caused the injuries to the plaintiff. These matters, it seems to us, are left entirely to conjecture.

■ An electric company is not an insurer nor is it under obligation to so safeguard its wires that by no possibility can injury result therefrom. Its duty is to exercise that degree of care commensurate with the danger involved. Alabama City, G. & A. R. Co. v. Appleton, 171 Ala. 324, 330, 54 So. 638, 640; Dwight Mfg. Co. v. Word, 200 Ala. 221, 224, 75 So. 979, 982; Lawson v. Mobile Electric Co., 204 Ala. 318, 320, 85 So. 257, 258; Blakeney v. Alabama Power Company, 222 Ala. 394, 398, 133 So. 16, 19; Alabama Power Co.

234

v. Matthews, 226 Ala. 614, 615, 147 So. 889, 890; Wetherby v. Twin State Gas & Electric Co., 83 Vt. 189, 75 A. 8, 11.

Just what particular agency produced the causal chain which injured the unfortunate lad is not proven. Was it a flash of lightning, was it a previously hanging wire, was it a wire momentarily thrown over the line immediately before the plaintiff came in contact with it, or what was it that caused the injury? We do not know. It was not proven. No one knows. And no one should be allowed to conjecture. From aught appearing, the wire was never there before the accident. It was never seen connected to, hanging or dangling from the transmission line and we do not think there was afforded the slightest inference that the defendant negligently allowed a wire to dangle or hang down from its transmission line. This was a material averment—the one averment of the complaint on which liability was sought to be rested, and it was essential for a recovery that it be proven. Stowers v. Dwight Mfg. Co., 202 Ala. 252, 253, 254, 80 So. 90, 91; Patterson v. Alabama Fuel & Iron Co., 194 Ala. 278, 284, 285, 69 So. 952, 954; Tobler v. Pioneer Mining & Mfg. Co., 166 Ala. 482, 515, 518, 52 So. 86, 97; Alexander v. Woodmen of the World, 161 Ala. 561, 566, 49 So. 883, 885; Hatch v. Varner, 150 Ala. 440, 442, 43 So. 481.

But there is another compelling reason which, we think, sustains the right of the defendant to the affirmative charge. In order to fasten liability on defendant, it not only must have been negligent, but the proof must show that the particular act of negligence charged proximately caused the injury. Stowers v. Dwight Mfg. Co., supra, (10).

We think it clear there was no such proof. The high tension line was not the instrumentality which injured the plaintiff, however dangerous it was. There is no evidence that this defendant or anyone else for whose acts or omissions it was accountable produced the condition which is alleged to have caused the injury to the plaintiff. If it be conceded that there was a wire hanging or dangling from the transmission line and the plaintiff's contact with it caused his injury, this direct and efficient cause was produced by the intervention of the independent, responsible agency that placed the wire over the line and trailed the current to the ground. Hence the only possible liability of the defendant in that case must be rested on a negligent breach of duty to discover and remedy the dangerous condition created by the presence of the foreign wire. And this liability would not ensue unless it be shown from the evidence that time and opportunity were available to the proprietor within which to discharge such duty, which certainly does not appear. When the wire was placed there, if so, was left entirely to conjecture and speculation, whether a moment, an hour, a week, or any other period before the accident. So it would be but to speculate to say that a reasonable inspection would have revealed any dangerous condition, unless defendant had stood guard over this line every instant, which was not its duty. A fortiori, a failure to inspect, if so, could not be said to be the proximate cause of plaintiff's injuries.

A case of much factual similarity, but somewhat stronger against the electric proprietor than the one at bar, is Golson v. W. F. Covington Mfg. Co., 205 Ala. 226, 87 So. 439, where a five year old boy was killed by electricity transmitted by an electric wire through a hay wire suspended therefrom to the ground below where the boy was standing. The boy concededly was not a trespasser and had not placed the hay wire on the electric line and it was alleged that the hay wire had been there for, to wit, three days and the evidence showed two dead frogs at the wire, dead long enough for flies to be attracted there, and a dead chicken at the wire, dead long enough to be infested with maggots, the inference contended for being that such dead frogs and chicken had been electrocuted, thus implying notice to the defendant by the long standing condition. The court pointed out that though the defendant was under the duty to exercise reasonable care, including inspection, for the safety of persons, especially children, who might be upon the premises (as in the case at bar), it was due the general affirmative charge. Speaking through Mr. Justice McClellan, it was observed:

"But in the present instance the evidence shows indisputably that the proximate cause of this child's death was not the instrumentality, the transformer, however dangerous it was. That cause was afforded by the intervention of the independent, responsible agency that placed the foreign wire on the high-tension wire, and trailed its current-transmitting line to a point outside the latticed inclosure of the transformer. Hence the only possible lead to this proprietor's liability that the law could recognize must be found in the negligent breach of duty on the part of this proprietor to discover, and to guard, or to remove, the condition thus created by the presence of the foreign wire. Now this duty on the part of a proprietor may exist, and still the proprietor not be held responsible for injurious consequences, unless time and opportunity were available within which the proprietor might discharge his duty to discover and to guard or remove the condition creating the hazard to invitees. The mere fact of injury on the private premises of another will not alone impute negligence to the proprietor. 20 R.C.L. §§ 51 and 52.

"The burden of proof was, of course, on the plaintiff to make out a prima facie case of negligence * * *. There was no evidence that this defendant, or any one else for whose acts or omissions he was accountable, placed this foreign wire in contact with the high-tension wires, or that they knew or had any notice of its presence. When it was placed there was left entirely unindicated in the evidence—whether an hour, a week, or any other period before the tragedy occurred— * * *.

* * * * * *

"In American Cast Iron Pipe Co. v. Landrum, 183 Ala. 132, 135-136, 62 So. 757, and Carlisle v. Central of Georgia Railway Co., 183 Ala. 195, 198, 62 So. 759, it was held that where the testimony leaves a material matter leading to liability so uncertain as between causes for which the defendant might be responsible and causes for which the defendant could not be held accountable—

" 'it is not for the jury to guess * * * that the negligence of the defendant was the real cause when there is no sufficient foundation in the testimony for that conclusion.'

"The doctrine of these cases is due application to the very material matter we have indicated. Whether the dangerous condition in question, viz. the presence of the foreign wire, as stated, existed sufficiently long to have enabled the defendant, with reasonable diligence, to have discovered it, and removed or guarded it, is left in too much uncertainty to warrant any possible conclusion upon which to rest the liability of this defendant. The quoted evidence does not show, with any degree of uncertainty, that the animal life decomposing about where the boy was killed was rendered so by contact with this foreign wire. That may have been the cause of the death of the chicken and the frogs, but this mere possibility was not sufficient to show a discharge by the plaintiff of the burden of proof resting upon her. Furthermore, the evidence did not enlighten the court or the jury as to the period of time requisite in this climate, in the month of May, to set up the decomposition of this animal life that the evidence discloses. Having failed to efficiently discharge the burden of proof with respect to this material matter, it cannot be affirmed here that the trial court was in error in giving the general affirmative charge at the request of the defendant." 205 Ala. 229–230, 87 So. 441.

Other cases bearing some analogy and leading to the same result are: Alabama Power Co. v. Cooper, 229 Ala. 318, 319, 320, 156 So. 854, 855, 856; Littleton v. Alabama Power Co., 243 Ala. 492, 494, 10 So.2d 757, 759; Lawson v. Mobile Electric Co., 204 Ala. 318, 323, 85 So. 257, 261; Sheffield Co. v. Morton, 161 Ala. 153, 167, 49 So. 772, 776; McClusky v. Duncan, 216 Ala. 388, 390, 113 So. 250, 251; Green v. West Penn. Ry. Co., 246 Pa. 340, 92 A. 341, 342; Kelly et al. v. Texas Utilities Co., Tex.Civ.App., 115 S.W.2d 1233, 1234, 1235; Fredericks, Adm'r v. Kentucky Utilities Co., 276 Ky. 13, 122 S.W.2d 1000, 1002; Watral's Adm'r v. Appalachian Power Co., 273 Ky. 25, 115 S.W.2d 372; Dilley v. Iowa Public Service Co., 210 Iowa 1332, 227 N.W. 173, 175; Adams v. Bullock, 227 N.Y. 208, 125 N.E.

93, 94; Musser v. Norfolk & W. R. Co., 122 W.Va. 365, 9 S.E.2d 524, 526.

But appellee, to avert the application of these well-known legal principles, seeks to invoke the doctrine of *res ipsa loquitur*. We regard Golson v. Covington Mfg. Co., supra, as conclusive, but will respond briefly to the insistence. This doctrine, like many other legal concepts, has been the subject of much diversity of opinion. Briefly stated, *res ipsa loquitur* is: When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendant's want of care. San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed. 680.

For the doctrine to apply, there are at least three essentials: (1) the defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident. Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; 9 Wigmore on Evidence, 3d Ed., § 2509, pp. 380 et seq.; Shain, Res Ipsa Loquitur, 280–281; Law of Negligence, Shearman & Redfield, Vol. 1, § 56, pp. 150 et seq.; 29 C.J.S., Electricity, § 66, pp. 626 et seq.; 38 Am.Jur., § 295, pp. 989 et seq., §§ 299, 300, pp. 995–996.

The function of the doctrine is to supply a fact which must have existed in the causal chain stretching from the act or omission of the defendant to the injury suffered by the plaintiff, but which the plaintiff, because of circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed. The missing fact is that the defendant was negligent. The rationale of the theory, in part, is that defendant in charge of the instrumentality which caused the injury is possessed of superior knowledge and by reason thereof is better advantaged than plaintiff to know the true cause and therefore, negligence is presumed and the burden is upon the defendant to adduce proof to overcome the presumption. Authorities, *supra*.

We think it clear enough that the case is *without the aid of the rule*. The thing which is alleged to have caused the plaintiff's injuries, the dangling wire, was not owned, maintained or controlled by the defendant, nor in the nature of things was the defendant possessed of any superior knowledge or information concerning it. The plaintiff and his brother, present at the scene, were in better position to have been informed or know of the condition which produced the injury. The only apparatus or equipment which the defendant owned, maintained or controlled and about which it could be charged with superior knowledge was the transmission line, which concededly was properly constructed and maintained at a sufficient height above the ground to prevent injury from anything in the ordinary course of foreseeable events. The automobile spark coil wire which seemingly is to be supposed to have been dangling from the line was no part of its equipment nor under its control, and information or knowledge in regard to it was as accessible to the plaintiff as the defendant, if not more so. The facts do not present a case for the application of the rule. We repeat, the Golson case, supra, is governing.

We cannot agree with the argument of learned counsel for the appellee that Bloom v. City of Cullman, 197 Ala. 490, 73 So. 85, brings the case within the scope of the doctrine. The apparatus with which the plaintiff was injured in that case was an arc light chain owned, maintained and under the supervision or control of the defendant, and the basis of applying the rule was thus correctly illustrated by Mr. Justice McClellan, who later authored the Golson opinion, to wit: " * * * The rule [res ipsa loquitur] was applied in Alabama City, G. & A. R. Co. v. Appleton, 171 Ala. 324, 331, 332, 54 So. 638, Ann.Cas.1913A, 1181, and in Town of Athens v. Miller, 190 Ala. 82, 66

So. 702; and no reason appears to deny it application where, as here, a pedestrian in a public street was stricken by contact with electric current passing from feed wires to a street light and communicated to the 'chain' we have before described, through some deficiency in the maintenance or repair of the machanism owned by and under the supervision and control of the municipality [defendant]. * * *" 197 Ala., 497, 73 So. 88.

Nor are the other cases relied upon by appellee persuasive. Without going into detail, it is sufficient to observe that in those cases the instrumentality which produced the injury was under the control and management of the defendant, which had in some way become defective, as where the electric proprietor transmitted excessive voltage into the building of a user, or where it had permitted one of its live energized wires or other appliance to be down or near the ground, usually along a street or sidewalk, where persons or animals were liable to come in contact with it. Such cases are: Alabama City G. & A. R. Co. v. Appleton, 171 Ala. 324, 54 So. 638; Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; Montgomery Light & Water Co. v. Thombs, 204 Ala. 678, 87 So. 205; Bloom v. City of Cullman, supra; Atlantic Coast Line R. Co. v. Carroll, 208 Ala. 361, 94 So. 820; Wright v. J. A. Richards & Co., 214 Ala. 678, 108 So. 610; Edmanson v. Wilmington & Philadelphia Traction Co., 2 W.W. Harr. 177, 32 Del. 177, 120 A. 923; Shoemaker v. Mountain States Tel. & Tel. Co., D.C.Idaho, 17 F.Supp. 591; Memphis Power & Light Co. v. Dumas, 11 Tenn.App. 231; Texas Power & Light Co. v. Bristow, Tex. Civ.App., 213 S.W. 702.

Sympathetic as we may be with the unfortunate young man who suffered serious injuries from the accident, we are convinced the charge of negligence was not proven and that error prevailed in the stated ruling in refusing the charge.

Reversed and remanded.

BROWN, LIVINGSTON, and LAWSON, JJ., concur.