MODESTA RAMOS, ETC., ET AL., Plaintiffs and Appellants, v. PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellee.

No. 183. Decided November 30, 1962.

574

*Felipe Marchand González* for appellants. *José Antonio Arabía* and *Juan F. Dobal* for appellee.
Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

A young country boy from the Puerto Rican hills suffered serious injuries upon coming in contact with a ground wire hanging from a pole used by the Water Resources Authority for its electric lines in the ward of Indiera Alta of Maricao. He filed a claim for damages imputing negligence to defendant enterprise consisting in that (a) the ground wire hanging down the pole "was weathered, detached from the pole, and away from the place where it was apparently nailed, and that the nails were weathered, deteriorated, and unserviceable; and (b) lack of signs warning the public of the dangerous condition of the high-tension lines installed at the place of the accident, despite "the conditions of age, poor state of conservation, and their negligent abandonment." [1] In its answer defendant set up as defenses that because of the manner in which it renders services—cables and wires laid out in the country and cities, and even within private property—it is not possible to maintain absolute control and inspection of the lines; that the lines at the place of the accident were installed and maintained in accordance with the security standards required and recommended for

---

[1] As element of this imputation of negligence, the evidence, in our opinion, sought to establish lack of adequate inspection in order to ascertain the existence of situations which were dangerous to the public.

such cases; that the accident was fortuitous and inevitable, or was due to plaintiff's gross negligence or imprudence, or to some irresponsible or criminal act of a third person who cut the wire and created a dangerous situation which could not be foreseen nor prevented before the occurrence of the acts for which claim is made.

In dismissing the complaint the trial court concluded that plaintiff failed to establish any act of negligence on the part of defendant enterprise, and that there was no basis for presumption of negligence by the application of the rule of *res ipsa loquitur*, since although the instrumentality which caused the damage was under defendant's exclusive control and it could not be held that the damages caused to plaintiff were due to the latter's fault or negligence, it could not be concluded from the manner in which the accident occurred that ordinarily it would not have occurred except through the negligence of defendant's agents or employees. These conclusions of law were based on the findings of fact which we copy below:

"1. On May 4, 1956, plaintiff Elenio Santiago Ramos, who at the time was 17 or 18 years of age, left his home in the morning in the ward of Indiera Alta of Maricao and headed for a nearby farm of Ángel Nigaglioni, where he was working weeding the coffee. Plaintiff took a short cut by a road within Nigaglioni's farm which he and other laborers of the farm used on their way to work with apparent permission of the owner.

"2. This short cut was about 15 feet away from the supporting pole of a high-tension electric line, owned by and under the exclusive control of Puerto Rico Water Resources Authority, which crossed the road at that point at an altitude of some 40 feet, as may be clearly seen in the photograph which constitutes *exhibit (L)* of defendant. The Water Resources Authority had installed alongside that pole a copper ground cable which was nailed with clamps placed two or three feet apart, for the purpose of receiving electric discharges of thunderbolts which could fall on those high-tension lines in that area.

"3. The ground cable protruded about one foot from the top end of the pole, as may be clearly seen in *exhibit (B)* of

defendant; the other end of the cable was buried at the bottom of the pole, as may be seen in *exhibit (D)* of defendant, so that it could carry the current from any thunderbolt which might fall on that line directly into the ground without touching the high-tension lines supported by the pole. Those lines were supported on crossbars separated from the pole and the ground cable at a distance of not less than three feet.

"4. On that day of May 4, 1956, when Elenio Santiago, plaintiff herein, passed by the road near the pole, the ground cable was broken near the base and was detached along the entire length of the pole from the usual position in which it was nailed with clamps. The lower end of the cable was protruding outward on the side of the road over some banana plants, as may be seen from the drawing made by one of the defense witnesess on the photograph which is *exhibit (H)* of defendant,[1] ([1] Apparently some of the plants of that group of banana plants were closer to the road at the time of the accident) and the lower end of the cable was hanging at a distance slightly less than plaintiff's stature. The ground cable was held by a clamp only at the top end of the pole about one feet [*sic*] from the end, the cable at that moment being in contact with one of the high-tension lines supported by the pole.

"5. Upon seeing the lower end of the cable hanging on the side of the road, plaintiff, unaware that it could be charged, took hold of the cable to remove it from the road and received a strong electric shock which knocked him practically unconscious and caused severe burns in both hands and other parts of the body which disabled him partially.

"6. Neither party introduced evidence of any kind to establish the manner in which the ground cable had broken loose from the place where it was nailed alongside the pole, broken near the base, and hanging loose along the side of the road in the manner plaintiff found it that day. The only evidence which sheds any light on this point is the testimony of engineer Antonio Santiago, who is in charge of the electric lines of Water Resources Authority in the District of Mayagüez. He testified that on certain occasions those ground cables have broken loose from the pole as a result of thunderbolt discharges, indicating also that an electric discharge of that nature could throw out one of these cables leaving it in the position in which plaintiff found it when he sustained the accident.[2] ([2] In fact, it is almost

impossible to believe that that cable remained in that position as a result of some other cause.)

"7. Nor is there evidence of any kind on how long this cable had been in that condition when the accident occurred, it not having been shown either that defendant had knowledge prior to the occurrence of the accident of the breakage of the cable and of the fact that it had been detached from the pole and was making contact with high-tension lines. Nor was any evidence introduced to support plaintiff's allegation that the ground cable with which he came in contact 'was weathered, detached from the pole, and out of place' because the clamps which held it to the pole were 'weathered, deteriorated, and unserviceable.'"

We issued a writ to review the judgment which dismissed the complaint. The principal errors assigned refer to the two conclusions of law made by the trial court holding that no act of negligence on the part of defendant was established, and upholding the inapplicability of the doctrine *res ipsa loquitur.*

1. Persons or enterprises engaged in generating and distributing electricity should exercise the highest degree of care to avoid damage, considering the inherently dangerous character of this element. However, they do not have the responsibility of an insurer and, therefore, they are not liable in any case in which damage is caused, unless the damage has been brought about through their fault or negligence in not exercising a degree of care commensurate with the risk or danger involved. *Matos v. P.R. R. L. & P. Co.,* 58 P.R.R. 162, 166 (1941); *Eastern Shore Public Service Co. v. Corbett,* 177 A.2d 701 (Md. 1962); *Richmond v. Florida Power & Light Co.,* 58 So.2d 687 (Fla. 1952); *Alabama Power Co. v. Berry,* 48 So.2d 231 (Ala. 1950); *Mintz v. Town of Murphy,* 69 S.E.2d 849 (N.C. 1952); 3 FRUMER, Personal Injury 536. This degree of care does not merely include the installation, maintenance, and operation of the power plant and transmission lines; it also includes the duty to make an adequate inspection for discovery of defects and

578

situations of danger or risk to the public.. *Duke Power Co.* v. *Mullinax*, 214 F.2d 431 (C.A. 4, 1954); *Hale* v. *Montana-Dakota Utilities Co.*, 192 F.2d 274 (C.A. 8, 1951); *Caraglio* v. *Frontier Power Co.*, 192 F.2d 175 (C.A. 10, 1951).

██ Since we are not concerned precisely with a situation of absolute liability, it is not necessary to safeguard the lines in such a way as to eliminate every possibility of risk or danger; the obligation consists in taking such precautions as will insure against possibilities of risk and danger, *Alabama Power Co.* v. *Berry*, 48 So.2d 231 (Ala. 1950); *Rudd* v. *Public Service Co. of Oklahoma*, 126 F. Supp. 722 (Okla. 1954), and it is not presumed that every fortuitous circumstance which may cause damage be anticipated, *Stark* v. *Lehigh Foundries*, 130 A.2d 123 (Pa. 1957); *Perrine* v. *Pacific Gas and Electric Company*, 9 Cal. Rptr. 45, 49 (1960). It must be borne in mind that in the case of a public utility service, the distribution of electricity and electric power should not be hindered by requiring the adoption of every protection conceived by the human mind for the purpose of avoiding risks, no matter how unforeseeable. The social benefit of electrification can not be defeated by requiring absolute responsibility.

The trial court determined, as a matter of fact, that plaintiff had failed to establish his allegation that the ground wire with which he came in contact was weathered and that the clamps which held it to the pole were deteriorated and unserviceable. This finding is supported by the evidence which, if it reveals anything, is that the installation was recent, made in 1952, or four years before the accident; that the ground wire did not present signs of deterioration —as may be established by an examination of the photographs admitted in evidence—and that it had been nailed with clamps alongside the pole; that the wire had been installed at a distance of not less than three feet from the high-tension lines in order to avoid contact, following the

ordinary security standards in those cases. Furthermore, it appears clearly that at least one week prior to the occurrence of the accident the wire was in the position in which it was originally installed, serving its purpose as lightning rod.

Appellant insists that the negligence of the Water Resources Authority, consisting in its failure to inspect periodically the installations, was established. He makes reference to defendant's answer to an interrogatory served upon it prior to the trial. The difficulty lies in that the answer was not offered in evidence and that it could not be taken into consideration by the trial court nor by this Court in this petition for review. *Water Resources Authority* v. *District Court*, 66 P.R.R. 796, 801 (1947). The only evidence on this point consists in the testimony of defendant's employees who testified that they made periodical inspections on foot every three months. Regarding defendant's duty to inspect its lines, it is well to point out that it does not presuppose a continuous vigilance as to be fully aware of the condition of the wires at all times, *Jackiewicz* v. *United Illuminating Co.*, 138 Atl. 147 (Conn. 1927), and that in the absence of special circumstances the frequency of the inspections should be determined taking into consideration the situation of the lines, the possibility that the public may come in contact with the lines, the class of installation, and other factors. *Cf. Machuca* v. *Water Resources Authority*, 66 P.R.R. 174 (1946). That is why the same degree of care can not be required in the case of wires extending on public highways and in lines laid in the rural zone. The controlling factor is the possibility of risk. In the instant case we are concerned with lines of rural electrification service installed in the very heart of the mountains, far from the public highways, in an unpopulated and remote place, and placed in such a way that the possibility of risk to the public is minimum. It can not be asserted that the

inspection work performed by the Authority showed the commission of negligence. *Cf. Roos* v. *Consumers Public Power District,* 106 N.W.2d 871 (Neb. 1961) ; *Weissert* v. *City of Escanaba,* 299 N.W. 139 (Mich. 1941) ; *Morrison* v. *New York Telephone Co.,* 14 N.E.2d 785 (N.Y. 1938). See Annotation, *Liability for injury or death from electrification of guy wire,* 55 A.L.R.2d 129 (1957).

Defendant's acts of negligence complained of in the allegations were not established by the evidence. This does not preclude the application of the doctrine *res ipsa loquitur* in an attempt to save his cause of action. *Martínez* v. *U.S. Casualty Co.,* 79 P.R.R. 561 (1956) ; *Rodríguez* v. *Aponte,* 78 P.R.R. 719 (1955) ; *Román* v. *Mueblería Central,* 72 P.R.R. 320 (1951) ; *The Effect of Specific Allegations on the Application of Res Ipsa Loquitur,* 27 Fordham L. Rev. 411 (1958), where the three theories on the matter are discussed at length.

2. Appellant contends that the trial court erred in concluding that there was no basis for establishing a "presumption" of negligence against defendant by the application of the doctrine *res ipsa loquitur*. He maintains that defendant failed to introduce evidence to prove that it was diligent and cautious to avoid the damage done.

Before considering the error assigned, it is well to determine the procedural effect of the doctrine *res ipsa loquitur,* which properly focused is but a manifestation of circumstantial evidence. As stated in 2 HARPER AND JAMES, The Law of Torts 1099–1104, § 19.11, there have been designed three rules on the matter which agree that, if the plaintiff has made out a *res ipsa loquitur* case, he succeeds in avoiding the dismissal of the action at the close of his own case.[2] The rule adopted by a majority of jurisdictions is

---

[2] In the explanation of the rule contained in the opinion delivered in *Hermida* v. *Feliciano,* 62 P.R.R. 54, 57 (1943), it is stated that the effect of the application of the doctrine is precisely to give plaintiff an opportunity that the evidence and the possible conflict raised be considered by the trier, if defendant elects to introduce evidence.

known as the theory of "permissible inference," [3] which substantially implies that: (a) upon the close of plaintiff's evidence defendant is not entitled to a nonsuit; (b) if defendant decides not to put in any evidence, plaintiff is not entitled to judgment unless the prima facie proof is so convincing that the inference of negligence arising therefrom is inescapable if not rebutted by other evidence; (c) if defendant puts in evidence which tends to explain the accident or rebut the inference of negligence, this will not entitle him to judgment, unless the proof is so convincing that reasonable minds could not draw an inference of negligence in the face of it; and (d) in the absence of situations (b) and (c)—which seldom occur in practice—the trier has the burden of determining the question of negligence, guided by the following rules: (1) plaintiff may recover only if they find that defendant was more probably negligent than not; (2) the circumstances afford a basis for inference, which they may but need not draw, that defendant was negligent; and (3) there should be considered the explanation and rebuttal offered by defendant.

The second theory recognizes in a *res ipsa loquitur* case the effect of creating a presumption, instead of an inference,[4] of negligence. The principal difference between this and the majority rule consists in that if defendant introduces no evidence tending to rebut a presumption, plaintiff is entitled to judgment even though the evidence might not be so strong and unequivocal as to require that result under rule of permissible inference.[5] The effect of the presumption is not to shift the burden of proof to defendant by re-

---

[3] W. L. PROSSER, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241 (1936); HECKEL AND HARPER, *Effect of the Doctrine of Res Ipsa Loquitur*, 22 Ill. L. Rev. 724 (1928).

[4] CARPENTER, *The Doctrine of Res Ipsa Loquitur*, 1 U. Chi. L. Rev. 519 (1934).

[5] The Law of Evidence defines inference as "a deduction which the reason of the judge or jury makes from the facts proved, without an

quiring evidence of greater weight or probative value than that introduced by plaintiff; it is merely to require him to introduce evidence to prevent that judgment be rendered for plaintiff.

The third theory as to the effect of the doctrine *res ipsa loquitur* is that it shifts to defendant the burden of persuading the trier, *by a preponderance of the evidence*, that the injury did not result from his negligence. Presumably this theory is applied coupled with the presumption rule of negligence.[6]

We have elaborated on these considerations because in the past we have employed language in our opinions which makes reference to the three preceding theories, making it necessary to clarify once and for all this Court's position on the procedural effect of the doctrine *res ipsa loquitur*. In *Matta* v. *Pueblo Super Market*, 80 P.R.R. 498 (1958), the most recent expression on the matter, we said at p. 501 that the rule "only creates a *rebuttable inference* of negligence that allows or authorizes the conclusion that the accident was caused by the negligence of the defendant, but in no way obliges the trier to conclude that there was negligence." (Italics ours.) *Kirchberger* v. *Gover*, 76 P.R.R. 851, 855 (1954), refers indistinctly to the "inference" and to the "presumption" of negligence which arises from the application of the rule; *Cintrón* v. *A. Roig, Sucrs.*, 74 P.R.R. 957, 964 (1953), points out that the doctrine under consideration is "a rule of evidence which is tantamount to a rebuttable inference of negligence under certain circumstances," and adds that "such an inference may be destroyed by the defendant's evidence."

---

express direction of law to that effect," and presumption as "a deduction which the law expressly directs to be made from particular facts." Sections 97 and 98 of the Law of Evidence, 32 L.P.R.A. §§ 1882 and 1883. Briefly stated, a presumption is mandatory; the inference is permissible.

[6] 31 Rocky Mt. L. Rev. 112 (1958).

*Martínez* v. *U.S. Casualty Co.,* 79 P.R.R. 561, 565 (1956) ; *Rodríguez* v. *Aponte,* 78 P.R.R. 719, 723 (1955) ; *Román* v. *Mueblería Central,* 72 P.R.R. 320, 324 (1951) ; *Rodríguez* v. *White Star Bus Line,* 54 P.R.R. 294 (1939) ; and *Aldiba* v. *P. R. Railway Lt. & P. Co.,* 41 P.R.R. 75, 79 (1930), deal with the effect of the doctrine as a presumption of negligence. Thus, in *Román* v. *Mueblería Central, supra,* it is said that "so long as the plaintiff does not show that it was not through his negligence that the accident occurred, the presumption of negligence which said doctrine entails prevails against him." And the shifting of the burden of proof is mentioned in *Rodríguez* v. *Aponte, supra; Román* v. *Mueblería Central, supra;* and *Hermida* v. *Feliciano,* 62 P.R.R. 54, 56 (1943).

 Having examined the cases of this Court as a whole, the conclusion reached is that, independently of lapsus linguae, this Court has followed the majority rule according to which the only effect of the application of the doctrine *res ipsa loquitur* is to establish a permissible inference in favor of plaintiff.

 Conceding that the scope of the doctrine *res ipsa loquitur* is to establish an inference of negligence, let us examine the requirements necessary for its application: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant;[7] and (3) it must not have been the result of any voluntary action or contribution on the part of plaintiff. *Cintrón* v. *A. Roig, Sucrs.,* 74 P.R.R. 957, 964 (1953) ; *Hermida* v. *Feliciano,* 62 P.R.R. 54 (1943).

[7] There are special situations in which the doctrine has been applied even though the instrumentality which caused the damage was not under defendant's exclusive control. *Rinkel* v. *Lee's Plumbing & Heating Co.,* 99 N.W.2d 779 (Minn. 1959), and comments in 59 Mich. L. Rev. 136 (1960). See, also, *Meaning of the Concept of Exclusive Control in Res Ipsa Loquitur Cases,* 7 Buffalo L. Rev. 330 (1958). The most common example is the explosion of bottles.

In *Cintrón* we said further that if from the facts there appears some other probable cause of the accident from which it may be inferred that there was no negligence, and if the evidence is compatible with the absence of negligence, the doctrine is not applicable. We also said that if the facts give rise to two conflicting inferences, one to the effect that due care was exercised and the other that negligence existed, the doctrine is not applicable. See 11 Syracuse L. Rev. 74–75 (1959).

 It is well to recall that the doctrine *res ipsa loquitur* need not necessarily be applied where plaintiff is unable to account for the cause of the accident. That is precisely what appellant purports to do in alleging that it is sufficient to show in his case that an accident occurred, that the lines are under defendant enterprise's exclusive control, and that plaintiff was not guilty of negligence. However, as correctly stated by the trial court, it can not be held that the accident for which claim is made ordinarily would not have occurred except for negligence on the part of defendant's agents or employees. HARPER AND JAMES, *op. cit.* at 1081, explain this requirement as follows: "the instrumentality causing injury must be such that no injury would ordinarily result from its use unless there was negligent *construction, inspection or use.*" Conceding that the lines and installations were not deteriorated and that the inspection by defendant's employees was sufficient under the circumstances of this case, is negligence attributable because of the detachment of a ground wire, it not having been established that defendant had knowledge in due time to prevent the occurrence of damages? Furthermore, as it clearly appears from the evidence—especially from the examination of the photographs introduced in evidence— it was practically impossible for the wire, which extended and made contact with the high-tension lines, to hang over the path where plaintiff was allegedly walking. It is well to

point out that the trier did not give credit to plaintiff's version of the occurrence, and that in the course of the trial he stated that "it is impossible that it [the wire] touch the ground." The inadequate conservation of the lines as the cause of the damage having been ruled out for lack of evidence, the court only had under consideration the possibilities intimated by defendant's evidence, namely, one, that to which the judge makes reference in his determinations, the detachment of the cable as the result of a thunderbolt, which would bring it within the sphere of fortuitous case, and another, the act of a criminal hand which cut the cable, under which it would not be responsible either. *Heirs of Matheu* v. *Municipality*, 56 P.R.R. 514 (1940), is distinguishable because there the wire was a high-tension wire which broke and fell on a public highway, the explanation of the breakage was not consistent with defendant's diligence, and the evidence did not establish that it inspected its lines periodically in order to ascertain their condition. See, also, *Orta* v. *P. R. Railway Lt. & P. Co.*, 36 P.R.R. 668 (1927); *Rosado* v. *Ponce Railway and Light Co.*, 18 P.R.R. 593, 613 (1912).

3. The third error assigned by appellant is to the effect that the court concluded that the wire broke as a result of an electric discharge, without evidence on that fact. However, from a careful reading of the opinion it will be observed that what the judge merely stated was that since the manner in which the ground cable broke loose was not established, the explanation which in his opinion seems more credible is the occurrence of an electric discharge.

The errors assigned not having been committed, the judgment rendered by the Superior Court, Mayagüez Part, on June 18, 1959 will be affirmed.