370 So.2d 252 (1979)
ALABAMA POWER COMPANY, a corporation,
v.
Robert C. ALEXANDER.
77-673.
Supreme Court of Alabama.
March 2, 1979.
Rehearing Denied April 27, 1979.
*253 Thomas W. Christian, Birmingham, Sam A. LeMaistre, Eufaula, for appellant.
Russell L. Irby, Eufaula, for appellee.
SHORES, Justice.
This is an appeal by the Power Company from a judgment for the plaintiff in a personal injury action.
Plaintiff Alexander was employed by Billy Snead as part of a three-man crew hired to drill a well on a lot bordering Gammage Road in Barbour County. Alexander was injured when a 37-foot metal pipe, which he and the other crew members were removing from the well, came into contact with an uninsulated 7200-volt power line owned and maintained by Alabama Power Company.
The power line involved extends along the right-of-way of Gammage Road in a rural area of Barbour County and is located on an easement which has been held by Alabama Power Company since 1968. The line is 28' 5" above the ground and is in plain view; unobstructed by trees or other objects and inaccessible by structure or facility existing.
The property adjacent to Gammage Road is subdivided into lots; upon most of which mobile homes have been located.
The well being drilled when Alexander was injured was located only 17 feet from the power line. It could have been located at a point more distant from the line; but it was located as it was so that the pump house would be located in the center of a circular driveway to be built by the owner of the lot.
Alexander was injured on the second day of work on the well. To drill the well, 3 subsections of pipe were forced into the ground, joined one to the other, creating an ever-increasing length of pipe extending deeper into the ground. At the end of the first workday, the pipe was withdrawn from the well and disjointed so that the maximum length of any one unit was less than 10 feet as it was withdrawn from the well.
On the second day, the pipe sections were reinserted into the existing hole in sections and joined as on the day before. At the end of the workday, however, one of the crew members suggested that they remove the pipe in one-unit lengths "to save time." After some discussion about removing it without disjointing it, Snead said ". . . `If you think you can hold it, it is up to you.'" The crew, of which Alexander was one, then pulled a 37' 3" section out of the hole. As they were holding this section upright, it either became "top-heavy" beyond their ability to hold it or the wind *254 caused it to fall onto the line. Alexander received an immediate electrical shock, resulting in severe personal injuries.
At trial, Snead testified that he knew the power lines were there but "figured we were far enough away" from the lines. Alexander testified that he knew they were there but did not know they were uninsulated.
The accident occurred the first time the workmen attempted to remove the pipe in one section.
At the end of the plaintiff's evidence, the Power Company asked for a directed verdict, which was denied; and after the jury returned a verdict in plaintiff's favor, it moved for a judgment notwithstanding the verdict. This appeal followed.
The duty of one who maintains a power line has been stated as follows:
"`The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.' Curtis on Law of Electricity, § 510."
Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975); Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228 (1962); Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300 (1954). Electric companies are not insurers of the public's safety, and the law does not impose strict liability for all accidents involving their power lines. Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975); Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231 (1950).
Alexander does not contend that the Power Company was in violation of any duty imposed by either statute or municipal ordinance in excess of 25 feet (28' 5") when all that was required by the regulatory agencies was a height of 18 feet. He contends, however, that, under the facts of this case, the Power Company should have anticipated that persons, pursuing business or pleasure, would come in contact with the power lines. Therefore, he contends the Power Company had a duty to insulate these wires; and that a breach of that duty resulted in his injuries.
Where the facts, upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury. Where, however, the facts are undisputed, the existence of a duty, under those facts, is a question of law. Sammons v. Garner, 284 Ala. 131, 222 So.2d 717 (1969) (sustaining of a demurrer to a complaint held proper for failure to show the existence of a duty); Stockley v. Alabama Power Co., 283 Ala. 664, 220 So.2d 605 (1969) (granting of request for an affirmative charge in favor of the defendant held proper in absence of facts from which a duty could arise). See L. Green, Judge and Jury 55 (1930). See also: Gilbert v. Gwin-McCollum Funeral Home, 268 Ala. 372, 106 So.2d 646 (1958); Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305 (1945).
In this case, there is no evidence that Alabama Power Company had either actual or constructive notice that well drilling was in progress at a site near their power lines. Absent this notice, the Power Company had no duty to insulate the wires or take other precautionary measures unless under the totality of circumstances, the Power Company should have reasonably anticipated that persons, pursuing business or pleasure, might come in contact with the power lines.
In Alabama Power Co. v. Tatum, supra, it was held that the Power Company should have reasonably anticipated that small children would climb trees which were located in residential areas and, in so doing, come in contact with power lines. There, the Power Company was said to have a duty to insulate and properly maintain those wires so as to prevent injury. This was also the holding in Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975).
*255 Alabama Power Co. v. Irwin, supra, is factually similar to this case except for at least one material distinction. In that case, a metal pipe was being removed from a well when it struck uninsulated power lines. However, the power line in Irwin had been installed by the Power Company near a well which had been in existence for many years; and the Power Company knew that the well required periodic maintenance, usually on an annual basis. Under those facts, the court held the Power Company had a duty to insulate the power lines.
In each of these cases, there was evidence to support a conclusion that the Power Company should reasonably have anticipated conduct in the area of the power lines which might result in contact with the wires and resulting injury.
This is not such a case. To the contrary, the evidence shows that all other wells in the area were located 130 to 140 feet distant from the wires. The power line was put in place in 1968, many years before the well in this case was drilled. The Power Company could not reasonably anticipate that a well would be placed within 20 feet of its lines and, even if it had, that a 35' length of pipe would be pulled from the well in one section. The only time this was done was on the occasion of the accident.
The injuries suffered by Mr. Alexander are severe and the accident causing them was unfortunate. However, we are bound to follow the law and it simply does not impose upon the Power Company, under these facts, liability to him.
Therefore, the directed verdict requested by Alabama Power Company should have been granted. United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala. 1977); Coburn v. American Liberty Ins. Co., 341 So.2d 717 (Ala.1977).
The judgment appealed from is, therefore, reversed and remanded for the entry of judgment consistent herewith.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX and BEATTY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially).
I concur specially in order to underscore my unqualified agreement with the opinion. Unarguably, this horribly and permanently injured young man was the unwitting victim of one of society's most dangerous instrumentalities an uninsulated high-voltage electrical wire. Our legal system provides reparation for such injuries, however, only within the fault concept. Liability for maintenance of risk of harm to others in these cases is measured by the "reasonable foreseeability" test. The most routine and well-regulated activities of modern society expose each of us to multiple risks of harm. But the fault concept translates into a "reasonable and due care" standard of duty; and, more specifically here, the Power Company's liability for the alleged breach of their duty is whether, under all the circumstances shown by the evidence of record, the jury could reasonably infer that the Company should have reasonably foreseen the probability of risk of harm to others and thus have eliminated the risk by insulating the lines at the location of the incident.
The Plaintiff concedes the Power Company's two principal affirmative factual premises for its argument supportive of its motion for directed verdict: 1) Its occupancy was in the exercise of a lawful right. Its lines were properly and legally on the public right-of-way. 2) The height of its lines well exceeded the minimum safety standard established and recognized by the industry.
Plaintiff contends, and I agree, that these two factors, standing alone and in combination, of themselves are insufficient to take the case from the jury. As Plaintiff points out, it is the totality of the circumstances that must be looked to in applying the requisite test. This totality of circumstances, argues the Plaintiff, includes the fact that Plaintiff was an invitee engaged in a lawful pursuit on the property of another and that it was within the jury's province to conclude that the Company reasonably should have foreseen domestic activity upon *256 and about property of this nature and character and guarded against those risks naturally incident thereto. Plaintiff further contends, and correctly so, that it is not necessary that the jury find that the Company should have foreseen this particular activity or risk in question. The Power Company counters by asserting additional negative, that is the absence of, circumstances that would reasonably support any inference or foreseeability of harm. No other domestic wells in this vicinity were located on the "front edge" of these residential lots. There was no evidence, direct or circumstantial, from which any notice of such activity reasonably could be inferred. Additionally, the evidence is clear that all the well drilling crewmen, including the Plaintiff, were aware of the presence of the Company's lines and the danger, and that shortly before this incident the crewman had commented on the necessity for watching out for the overhead wires.
To impose liability under the facts of this case would raise the degree of care owed by the Power Company to that of an insurer, and the fault concept, at least in this context, would have been dealt its death blow.