371 So.2d 9 (1979)
Jimmy LOLLAR
v.
ALABAMA POWER COMPANY.
77-659.
Supreme Court of Alabama.
April 6, 1979.
Rehearing Denied May 4, 1979.
*10 J. Richard Carr, James D. Pruett, Gadsden, for appellant.
Thomas W. Christian of Balch, Bingham, Baker, Hawthorne, Williams & Ward, Birmingham, and Roger C. Suttle of Inzer, Suttle, Swann & Stivender, Gadsden, for appellee.
PER CURIAM.
Plaintiff Jimmy Lollar was helping his friend, Joe Howard, erect a 90-foot CB antenna when the antenna fell against high power lines of Alabama Power Company. He was severely injured. Lollar sued the Power Company, claiming that the "electric lines apparently were built without authority and therefore constituted a trespass to private property with attendant danger to plaintiff and others so situated."
After trial, the jury returned a verdict for the Power Company.
Lollar appeals from the judgment entered on the adverse jury verdict, contending that the trial court erred in giving two written requested charges:
"DEFENDANT'S CHARGE `A': The Court charges the Jury that the Defendant, Alabama Power Company was not guilty of trespass, as a matter of law, in maintaining its power lines across the property of Joe Louis Howard and Annette Howard at the time of Plaintiff's accident."
"DEFENDANT'S CHARGE `C': The Court charges the Jury that the undisputed evidence in this case establishes that the Defendant, Alabama Power Company, had acquired an easement by prescription and had the legal right to maintain its power lines across the property of Joe Louis Howard and Annette Howard at the time Plaintiff was injured."
The Power Company contends that Lollar never properly objected to the giving of the two instructions. It also contends that the evidence clearly showed that it had obtained an easement by prescription; therefore, the maintenance of its power lines over the Howard property was lawful. The colloquy between the court and counsel for both sides is helpful:
"THE COURT: * * * Now then, you have got some here regarding prescription giving the Power Company the legal right to maintain the power line across the property. I am inclined to think that those are good charges, that they had it by prescription. Do you have any argument on that?
"MR. CARR: No, sir, I haven't researched it. They probably do have a prescriptive right. I don't think they have proved it though, Judge. There are some things that you have to prove for prescription. It just doesn't come out of the air. Now, where is the proof that they have a prescriptive right? I think probably that they do have, but I don't recall any proof toward that end. Of course, I think the charge should be based on the proof, not on what I think or what the Court might think. I don't recall any proof about any prescription.
"THE COURT: Other than the lines have been there since about 1927.
"MR. CARR: Yes, sir. If that is sufficient. If that in itself is
"MR. SUTTLE: And if they have refused to relocate or to move the lines at the request of Joe Louis Howard
"MR. CARR: No, they agreed to do it but said he would have to pay a lot of money for it.
"MR. SUTTLE: I know, but that is as far as expense.
"MR. CARR: Well, the Judge is bound by the evidence. I think it is uncontradicted.
"MR. CHRISTIAN: The elements, Judge, I don't want to be repetitious about this. You don't put somebody on and say `are you hostile or'
*11 "It comes from what the facts are, and the fact that it has been there fifty years is sufficient under the law.
"MR. CARR: But we don't know but what it has been moved and put back. You see, they have some proof. The burden is
"I don't want to be repetitious either. I just don't think they have proved their prescriptive rights.
"MR. SUTTLE: It was proved by Ray Kitchens.
"THE COURT: I thought Kitchens testified that it has been there continuously since 1929.
"MR. PRUETT: '38, I think, is what Ray said, but he thought it went back before that.
"MR. CARR: What about you charging on what prescription is and let the jury say whether they have prescriptive right.
"MR. SUTTLE: We think it is a matter of law under the evidence, your Honor.
"MR. CHRISTIAN: That case holds that it is beyond inquiry after 20 years.
"MR. CARR: Well, if you think the evidence sustains prescription then it probably does. I don't personally think
"I would hate to be in trying a case to prove prescriptive right with the evidence that is before the Judge. I think that the same burden is on them as it would be on anybody to prove prescription.
"MR. PRUETT: Judge, the evidence as it is about prescription is uncontradicted. If you think that as a matter of law makes that prescription then I guess you just have to charge the jury that we cannot recover for trespass.
"THE COURT: Well, you are not suing for trespass.
"MR. PRUETT: Well, I don't understand
"THE COURT: Really, it is a side issue it seems to me.
"MR. SUTTLE: To me too, your Honor.
"THE COURT: It doesn't really affect the question whether or not they were negligent.
"MR. SUTTLE: I don't think so.
"MR. CARR: Well, I think we would all hate to get a reversal on something that is not a
"What have you got in mind to say? I might just agree to it. What is the charge?
"THE COURT: I was going to give the charges they have got here that they have the legal right to maintain by prescription maintain the lines by prescription.
"MR. CARR: You are determining that as a matter of law?
"THE COURT: Well, I would think so under the evidence. I just
"MR. CARR: Well, frankly I haven't researched it, but I just don't believe the evidence is before the Court.
"THE COURT: Whether or not even if they were trespassing I don't think it really has any bearing on this particular case.
"MR. CARR: Well, could you say that some other way than saying they have a legal right? Could you strike those allegations 
"MR. PRUETT: Why don't you just tell the jury, Judge, that the plaintiff cannot recover because of the fact that the lines are located
"THE COURT: Well, they have requested these charges. Do you all want to withdraw these charges?
"MR. CHRISTIAN: No, sir. They have raised that as a big issue in this case.
"MR. SUTTLE: That is part of the pleadings in the complaint, your Honor.
"THE COURT: I don't think that the plaintiff in this case has any right to complaint to recover anything if they were even if they were trespassing.
"MR. CARR: It has to do with the burden though, Judge. They have a franchise to run on the public streets and the only way other than that they could get on private property would be through the process of an easement.
"THE COURT: All right, but they can get on private property with an easement *12 or in this case by prescription. The prescription would have run probably before Howard ever got possession of the property.
"MR. CARR: It is in the nature of a condemnation without damages. I have tried a case on that basis. Let me discuss that with Mr. Jim.
"MR. SUTTLE: Judge, you can acquire an easement by a deed or adverse possession or by prescription.Three different ways.
"MR. CARR: Could you cut that down to onethose all say the same thingand then we wouldn't object to it.
"MR. SUTTLE: Judge, we would like the court to rule on the strength of what we ask the Court to charge.
"MR. CARR: Just give it in your oral charge. I don't think that they have the right to have that said four times just by
"THE COURT: Well, I kind of agree with you.
"MR. CARR: If you would give it in the oral charge then it would cure all of our complaints.
"MR. PRUETT: Sure, you could cover it orally, Judge. Just tell them they cannot award damages to the plaintiff because the Power Company was not where it had a right to be and that will take care of it.
"THE COURT: All right, I will give Defendant's Charge C.
"MR. SUTTLE: Well, we want Number 1 there, your Honor.A rather.
"THE COURT: All right, I'll give A and C. The others are repetitious. To me it is kind of like the fact that a man doesn't have a drivers license and is involved in a wreck. The fact that he doesn't have a drivers license doesn't have a thing to do with his negligence.
"MR. PRUETT: That's what I say, just tell the jury that that is not an element of liability if you want to.
"THE COURT: Well, I will have to give their charges.
"MR. PRUETT: You don't have to give them at all, your Honor.
"THE COURT: I know, but I have got to charge them somehow.
"MR. CARR: If you did it in the oral charge in your own inimitable way we wouldn't have to have Tom's pros read to them so many times."
The "repetitious" instructions referred to by the court and counsel during the colloquy were two requested charges by the Power Company which the court refused to give:
"DEFENDANT'S CHARGE `B': The Court charges the Jury that the Defendant, Alabama Power Company, had the legal right to maintain its power lines across the property of Joe Louis Howard and Annette Howard at the time Plaintiff received his injury.
"DEFENDANT'S CHARGE `D': The Court charges the Jury that Defendant, Alabama Power Company, had acquired an easement by prescription to maintain its power lines across the property of Joe Louis Howard and Annette Howard at the time Plaintiff had his accident."
The trial judge read Charges A and C during his oral charge. When he concluded his charge to the jury, and inquired of counsel if they had any objections, plaintiff's counsel replied: "No objections."
This case is due to be affirmed by applying Rule 51, ARCP, which in pertinent part reads:
"... No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Since the adoption of ARCP, our appellate courts have interpreted this portion of the rule in varying factual contexts. Its purpose and spirit are aptly expressed by the Court of Civil Appeals in Hogan v. Alabama Power Company, 351 So.2d 1378 (Ala.Civ.App.1977), cert. denied, 351 So.2d 1388 (Ala.1977):

*13 "Permission to assign grounds for objections to the giving or refusal to give written requested charges is the heart and soul of Rule 51 for it allows the trial judge to intelligently re-assess the correctness of the oral charge that he has given or proposes to give. Such a re-assessment helps to minimize error and to avoid possible error in the giving or refusal of the requested charges. Therefore, for us to allow the grounds in support of the objections to be assigned in the motion for new trial would destroy the very purpose of the rule. Furthermore, should this court condone such a practice, we would not only have excised the heart of Rule 51, but we will have reverted back to the former practice of permitting a party to dump handfuls of written requested charges on the judge's bench just before the case is submitted to the jury to see how many erroneous charges the judge will give to the jury."
For a recent case reviewing several prior cases interpreting Rule 51, see Odom v. Linsey, 365 So.2d 664 (Ala.1978).
This is a case where Rule 51 can be appropriately applied.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
JONES and FAULKNER, JJ., dissent.
JONES, Justice (dissenting).
I respectfully dissent.

A. The Reviewable Error (ARCP 51) Issue
Our previous treatment of the reviewable error issue under ARCP 51 seemed consistent in its requirement that the spirit and purpose of the Rule be complied with, but without exacting an overly technical standard. Admittedly, this is a close case; but I believe it breaks the consistency established through the cases cited and reviewed in Odom.
The issue in the instant case arises in the context of "given" requested written instructions which were "read" by the trial Judge to the jury along with his oral charge. Additionally, when the Judge concluded his total instructions and inquired of counsel whether they had any objections, Plaintiff's counsel replied: "No objections."
The Power Company insists that this reply constituted a waiver of any and all objections to the entire charge (oral and "given" requested charges) irrespective of the objections and grounds therefor stated by the Plaintiff during the pre-charge conference. As to the oral instruction, unarguably, Plaintiff waived all objections; but my review of the record convinces me that the trial Court gave the requested charges after having fully understood counsel's objection and their grounds therefor as stated in a lengthy colloquy in chambers during the pre-charged conference.
On the record as here postured, I would hold that the giving of the requested jury instructions as part of the whole of the Court's oral charge, as mandated by the Rule, did not have the effect of so merging its contents as to cause the given requested portion to lose its identity; and, consequently, Plaintiff's post-charge "No objections" did not constitute a waiver of his objections to the subject charges which were marked "Given" and read verbatim to the jury.
Unquestionably, the better practice would be for counsel, who wishes to agree to the oral portion and preserve for appellate review any objections previously registered to the written requested portion of the charge, to continue beyond the mere "No objections" by adding, in substance: "Except, of course, for those objections and grounds therefor to the given requested charges as previously stated on the record"; or, counsel should restate his objections and grounds. But where, as here, the spirit of the Rule has been followed and the trial Judge has not been misled, I think we do violence to its purpose to exact upon the trial bar an overly technical application of the pertinent provisions of Rule 51.

*14 B. The Charges
As I turn now to the merits of the dispositive issue, I will treat the two charges as one since both state a single legal proposition: That, as a matter of law, the status of the Power Company in maintaining its line across Howard's property was that of one who had the lawful right to use the property, having acquired an easement by prescription, and not that of a trespasser.
A summary review of our case law disputes the correctness of this proposition. When the Power Company joined issue on Plaintiff's claim that its status in maintaining these lines was that of a trespasser, the burden of proof was on the Power Company to establish its right of easement by prescription. Evidence of forty years' continuous uninterrupted use of the property, under the circumstances as shown by the totality of the evidence, was sufficient to go to the jury on this issueto be considered along with all of the evidencewith appropriate instructions by the Court. But this evidence, standing alone, did not warrant a directed verdict on the "easement by prescription" issue.[1]
As the Power Company suggests, however, an adverse holding with respect to this initial inquiry does not of itself answer the ultimate question: Does the error in giving this incorrect instruction work a reversal of the cause?
The Power Company's argument that it does not is a persuasive one. Its duty to the Plaintiff, says the Power Company, is that of due care whether its status is that of a trespasser or that of one who was in lawful use of the property. It was the Plaintiff and not the Defendant, insists the Power Company, who asserted the claim of its trespasser status as the theory for his recovery; thus, his right to complain, even in the face of an erroneous instruction on this issue, is necessarily dependent upon whether the trespasser status theory of liability imposes a higher degree of care than that of due care on which the jury was charged by the Court.
I agree with the Power Company that its status as a trespasser on Howard's property does not alter the degree of care owed to Lollar as an invitee of Howard.[2] But the more serious aspect of this dual-pronged inquiry remains: Did the Court's erroneous instruction to the jury that the Power Company had a lawful right to maintain its high voltage lines across Howard's property, though not altering the Power Company's degree of duty to Lollar, nevertheless serve to encumber the jury's consideration of the due care issue?
My restatement of the ultimate issue, as posed above, finds its source in my careful review of the record of trial. Indeed, Plaintiff's counsel, during the pre-charge conference, stated to the Court: "... could you say that some other way than saying they have a legal right? ... It has to do with the burden though, Judge. They have a franchise to run on the public streets and the only way other than that they could get on private property would be through a process of an easement. ... Sure, you could cover it orally, Judge. Just tell [the jury] they cannot award damages to the Plaintiff because the Power Company was not where it had the right to be and that will take care of it."
Additionally, Plaintiff's counsel conclude in their brief: "... the Plaintiff's reasoning was not that the Power Company was liable to him because it was guilty of trespass but that it was liable to him because it had failed in a duty created by the [public way franchise] rule of the Public Service Commission [in evidence] in failing to relocate its lines to a safer point after notice of the danger."
It is not the Plaintiff's theory that the Power Company's status (i.e., assuming the *15 jury resolves this issue adversely to the Power Company) imposes upon it some different or higher degree of duty to Plaintiff as an invitee of the property owner; rather, Plaintiff contends that the Power Company's status at the time and place of the Plaintiff's injuries, though immaterial to the degree of care owed, was material to the jury's consideration of the Defendant's exercise of due care. Stated otherwise, Plaintiff insists that the jury had the right: First, to determine the Defendant's status; and second, to weigh this circumstance, along with all of the other evidence, in arriving at its final determination of Defendant's liability under the due care standard. I agree.
No case is cited, nor have I found one, that directly supports (or is opposed to) this proposition. The recent case of Alabama Power Company v. Alexander, 370 So.2d 252 (Ala.1979), however, is strongly supportive by way of analogy. There, we reversed a $300,000 verdict against the Power Company where the plaintiff, as a member of a well drilling crew, was electrically burned while manually hoisting a long section of pipe that contacted an overhead line. We found no evidence from which the jury could reasonably infer that the Power Company should have reasonably foreseen the necessity for insulating its electrical wires. The Power Company's two principal arguments related to its status as one whose lines were legally located on the public right of way and the fact that the height of its lines exceeded recognized standards.
We accepted these contentions and held that the totality of the circumstances, including its status as a lawful occupant of the premises, entitled the Power Company to a directed verdict on the issue of its alleged breach of duty to insulate its electrical lines. Just as the Power Company's status was a relevant circumstance in Alexander, as contended by the Power Company, its status is a relevant circumstance here. For other cases discussing various circumstances for jury consideration in determination of the due care standard, see Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975); Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (1945).
To give the Power Company the advantage of its lawful status, as we obviously did in Alexander, and then to hold here that its status is irrelevant to the "exercise of due care" issue, would be an inconsistent application of the same principle. The reader is cautioned not to conclude necessarily that this view is opposed to that of the majority, this issue not being addressed therein.
The fact that there are no reported cases on this point serves to verify that counsel for each of the parties in this type of case have assumed (and I think rightly so) that the Power Company's status is a relevant circumstance. Indeed, in the wake of Alexander, I would be surprised if the Power Company raises the issue again except in the context of asserting that its status in using the property to locate its lines is that of lawful occupancy. Its relevancy to the due care issue seems unarguable. Otherwise, the Power Company's claim, in a given case (as in Alexander), that it occupied the property upon which its lines were located under a deed of easement would be subject to exclusion upon Plaintiff's objection.
I would hold that the trial Court erred in excluding from the jury's consideration a determination of Defendant's status at the time and place of the incident made the basis of Plaintiff's claim, and in preventing the jury's subsequent consideration of that status as one of the circumstances which the jury had the right to consider in arriving at its final determination of liability under the due care standard.
I would reverse and remand.
FAULKNER, J., concurs.
NOTES
[1] For a statement of the applicable rule, see Hendrix v. Creel, 292 Ala. 541, 297 So.2d 364 (1974), and Bazzell v. Cain, 285 Ala. 661, 235 So.2d 805 (1970).
[2] Although the case cited as authority for the proposition (Blackwell v. Alabama Power Co., 275 Ala. 123, 152 So.2d 670 (1973)) is not directly in point. I agree that, by way of analogy, its principle supports the Power Company's view on this preliminary issue.