Plaintiff/Appellant Pepsi-Cola Bottling Company of Dothan, Alabama, Inc., commenced this proceeding with a four-count complaint, two counts of which (on account and negligence) were against Colonial Sugars, a division of Borden, Incorporated, seeking recovery of $10,156.27 allegedly paid by Pepsi to Colonial for 56,000 pounds of bulk sugar delivered via Southern Railway Systems.[1] The crux of the complaint was that a refund of such monies was appropriate, because, upon delivery, portions of the sugar were nonextractable from the railroad car.
The case was tried to a jury, which returned a verdict favorable to Colonial. Pepsi appeals. We affirm conditionally.
 FACTS
In April of 1979, Pepsi ordered from Colonial 176,362 pounds of bulk sugar at a price of 18.63 cents per pound. The cargo was shipped in one naqua-matic bulk sugar railroad car which contained three compartments, and was delivered to Pepsi on April 25, 1979, for which Pepsi paid Colonial in excess of $32,000.
Upon arrival in Dothan, for reasons unknown to Pepsi at the time, only two of the three compartments operated so as to freely discharge their contents. Following repeated attempts to rectify the situation, with no success, Pepsi was informed by Colonial's Mobile office to return the car and its one unloaded compartment to Colonial's plant in Gramercy, Louisiana. After receiving the car back in Louisiana, Colonial discovered that of the approximately 56,000 pounds of sugar originally in compartment three upon the car's leaving Dothan, only 2,150 pounds remained. Thereupon, Colonial issued to Pepsi a credit memorandum in *Page 192 
the amount of $264.45 based upon 2,050 pounds at $12.90 per hundredweight.[2]
 ISSUES PRESENTED AND STANDARDS OF REVIEW
Of the three issues stated, only the "preponderance of the evidence" issue is properly before us for review. Pepsi's abstract statement of issue No. 1, as well as the argument section of its brief, suggests no adverse ruling of the trial court to invoke appellate review. Additionally, our review of the record discloses that the court's instruction to the jury was confined to the plaintiff's claim for damages based upon the combined negligence of Colonial Sugars and Central of Georgia Railroad and Colonial's alternative defenses of the general issue and contributory negligence. Pepsi seeks to invoke our review of specific statutory provisions of the UCC upon which neither was the case tried nor the jury instructed.
Issue No. 2 is not properly before us because of Pepsi's failure to comply with ARCP 51. This Rule of civil procedure effected a major change in the former practice permitting reservation of error by the trial court's merely marking a written requested charge "refused." The Rule is explicit in its requirement of a specific objection and the assignment of grounds therefor. The record before us is devoid of any objections to any jury instructions given or refused on the point in question. For a series of cases in which this Court addressed the proper application of Rule 51, see Odom v.Linsey, 365 So.2d 664 (Ala. 1978); Gavin v. Hinrichs,375 So.2d 1063 (Ala. 1979); Lollar v. Alabama Power Co., 371 So.2d 9
(Ala. 1979); Louisville and Nashville Railroad Co. v. Garrett,378 So.2d 668 (Ala. 1979); Childress v. Cooper Real Estate,Inc., 399 So.2d 286 (Ala. 1981); Ward v. Southern Pine ElectricCooperative, Inc., 401 So.2d 22 (Ala. 1981); Walker v. Dutton,401 So.2d 32 (Ala. 1981); and Alabama City Bank of Gadsden v.Vaughn, 413 So.2d 1053 (Ala. 1982).
The requested affirmative charge in this case does not fall within the purview of the exception to Rule 51's application set forth in Pruitt v. Pruitt, 343 So.2d 495 (Ala. 1977).Pruitt correctly recognized that, ordinarily, a request for an affirmative charge is the legal equivalent of a motion for a directed verdict; but it conditioned the exemption of such a request from the requisites of Rule 51 on the trial court's awareness of the movant's position.
Pruitt posed the inquiry thusly: "[C]an a specific objection and stated grounds add to an explanation of such a request?" Generally speaking, a motion for directed verdict contains its own grounds, implicit in the context in which it is made; and a specific objection to the court's adverse ruling, and the assignment of grounds therefor, add nothing, because the request is self-explanatory.
Such is not the case here, however. Pepsi seeks appellate review of the trial court's refusal of the affirmative charge, based upon the application of complex UCC principles, but it is clear from the record that such matters were not brought to the trial court's attention. Furthermore, we note that no request for additional instructions on the law of the case relating to any claim other than negligence was ever forthcoming. Indeed, during a pre-charge conference in which the trial court considered, and preliminarily ruled upon, each of the parties' respective requested charges, and in which counsel was given the opportunity to register objections, the court's announced refusal of Pepsi's requested affirmative charge was met with total silence. Matters not presented below will not be reviewed on appeal. Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866
(1972).
The preponderance of the evidence issue, having been presented by Pepsi to the trial court as a ground for its post-judgment motion for a new trial, is properly before us for review. Johnston v. Bridges, supra. Our scope of review is governed by familiar standards. Absent a failure of proof claim(i.e., given a sufficiency of evidence *Page 193 
to overcome a directed verdict), one who challenges a judgment based on a jury verdict on grounds of the weight and preponderance of the evidence bears a heavy burden.
This burden finds its basis in the sanctity of a jury verdict, and the presumption of its correctness; and if the verdict is supported by the evidence, the presumption is strengthened where the trial court overrules a motion for a new trial. This is not to say that in all events and under all circumstances jury verdicts, supported by some evidence, are beyond judicial review. After indulging all presumptions of validity, and viewing the evidence most favorably to the nonmoving party, if the trial court is convinced that the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong, it is the court's duty to set the verdict aside and order a new trial. First Alabama Bank ofMontgomery, N.A. v. Coker, 408 So.2d 510 (Ala. 1982). Likewise, under the same standard, a trial court's ruling is subject to appellate review for abuse of discretion.
Turning now to the evidence, we find no direct testimony bearing on the mysterious loss of the sugar from the train on its return shipment from Alabama to Louisiana. There is, however, an abundance of circumstantial evidence — centered primarily around the defective handling of the shipment by both Colonial and Pepsi — which gives rise to conflicting inferences as to whose fault resulted in the loss. Indeed, our review of the evidence proceeds on this premise, because of Pepsi's failure to challenge the sufficiency of the evidence and Colonial's sole insistence on appeal that the weight and preponderance of the circumstantial evidence of Pepsi's contributory negligence sustains the verdict.
We agree with Colonial as to the negligence claim. Although the jury could have interpreted the evidence favorably to Pepsi, Pepsi's own testimony is replete with showings of circumstances from which the jury could conclude that the failure to extract the sugar was grounded in the ineptness and inexperience of Pepsi's employees in dealing with liquified sugar. Likewise, although the exact cause of the loss remains unknown, the jury could have found that the loss occurred during shipment and that the loss was due to Pepsi's mishandling of the extraction process.
The inferences from the evidence supportive of Pepsi's claim of negligence do not reach such a degree of preponderance as to outweigh the contrary inference of Pepsi's contributory negligence and thus impugn the jury verdict. We find no abuse of discretion on the part of the trial court in overruling Pepsi's motion for a new trial as to the negligence claim.
When the preponderance of the evidence test is applied to the claim in assumpsit, however, we are constrained to reach a different result. Assuming no tort liability on the part of Colonial, we, nonetheless, are unable to find any explanation of Colonial's credit to Pepsi for only 2,050 pounds of sugar, when Colonial's own uncontradicted testimony shows that the amount of sugar returned was 2,150 pounds. Likewise, Pepsi paid $18.63 per hundred pound weight for the original shipment, while Pepsi's credit allowed by Colonial for the returned sugar was $12.90 per hundred pound weight.
As we concluded earlier, Pepsi's allegation of error with respect to the trial court's refusal to grant its affirmative charge was not properly presented for review. But this does not preclude our consideration of undisputed evidence which conclusively establishes Pepsi's entitlement to a portion of its liquidated damages claimed in assumpsit. Apart from the charges and countercharges of fault (an issue settled against Pepsi), Colonial's credit to Pepsi for $264.45 is $135.40 less than $399.85 — the full amount due for the sugar returned to and accepted by Colonial. Thus, a zero verdict for Pepsi is unsupported by the evidence.
As to the claim for negligence, the judgment is affirmed. As to the claim for monies due on account, the judgment is affirmed conditionally. If, within 28 days from the date of the judgment of this *Page 194 
Court, Colonial files in the trial court a confession of judgment in the amount of $135.40 and costs of court, and files with the clerk of this Court a certificate of the same, the judgment on appeal will be affirmed. Otherwise, the judgment will be reversed and a new trial ordered as to the claim on account.
AFFIRMED IN PART; AFFIRMED CONDITIONALLY, IN PART.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Plaintiff's original complaint was brought against Colonial Sugars, Southern Railway Systems (later replaced by Central of Georgia Railroad), and A to Z as unknown defendants. Defendants A to Z were later dismissed. No appeal is taken from a favorable jury verdict and judgment thereon for Central of Georgia.
[2] The discrepancy between the numbers 2,150 and 2,050 is addressed later in this opinion.