HOUSTON, Justice.
Sadie Foster suffered electrical burns during the course of her employment as a welder at a shipyard in Bayou La Batre, Alabama. She sued Alabama Power Company (“APCo”), alleging that its negligence had proximately caused her injuries. A jury found for Ms. Foster and awarded her $1,000,000 in damages. The trial court entered a judgment on the jury’s verdict and later denied APCo’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. APCo appealed. We affirm.
Ms. Foster was welding on the deck of a 90-foot steel-hulled commercial shrimp boat when she was injured. Boats of this kind were built at the shipyard in an assembly-line fashion. Construction on the boats progressed as they were moved, stern (rear end) first, toward a bayou, along a 450-foot railway that extended into the water. The boats were launched from the railway. Four uninsulated high-voltage lines that were owned and maintained by APCo crossed over the railway a distance of approximately 100 to 110 feet from the shore. There was a clearance of approximately 51 feet beneath these lines where they crossed the railway. The highest points on the boats, prior to the installation of the masts and other tall structures, were the tops of the wheelhouses,[1] which *175 were approximately 30 feet above the ground. The masts and other tall structures were installed on the boats on the bayou side of the lines. Cranes with boom extensions exceeding 51 feet were utilized all along the railway on both sides of the lines. APCo had raised the lines to provide the 51-foot clearance because a representative of the shipyard had contacted it and had expressed concern that the boats passing underneath the lines might come in contact with them. Representatives of APCo, who had viewed the shipyard before, during, and after the installation of the lines at the 51-foot height, were aware of the boat-building operation.
The boat on which Ms. Foster was working at the time of her injury was positioned so that the lines crossed over the front part of the wheelhouse. The front part of the wheelhouse was located toward the bow (front end) of the boat. Approximately 15 feet of the bow had not passed under the lines. The boat’s mast, which was 25 feet in length, had already been installed on the top of the wheelhouse. Stabilizer pipes were being installed to reinforce the mast. These tubular pipes were approximately three inches in diameter and 40 feet in length. They were being lifted from the ground behind the boat to the top of the wheelhouse by a crane that was located approximately midship, 10 to 12 feet off the right side of the boat, looking forward (starboard). Clay Burroughs was operating the crane and John Ladnier, the hull foreman, was standing on the top of the wheelhouse positioning the stabilizer pipes and giving directions to Burroughs with his hands. Ms. Foster was working on the deck of the boat, approximately eight feet below Ladnier, welding a steel ladder to the wheelhouse. Ms. Foster, who is left-handed, was using an electric are welder. She testified that the cable that connected the welding machine located on the ground to the welding “whip” that she was holding had become worn. She stated that a “pin hole” in the cable had apparently caused the machine to “short out” on the steel railing on the side of the boat behind her prior to her accident. She testified that she had seen sparks near the railing, but that she had continued to weld.
Burroughs lifted a stabilizer pipe with the crane and swung it across the boat’s stern to approximately midship, where Lad-nier was waiting on the top of the wheelhouse to receive it. Ms. Foster testified that she saw the pipe and that she grabbed it with her right hand to avoid being hit by it. She further testified that when she touched the pipe she felt as though she was being electrically shocked, but that she could not let go of the pipe. She stated that her body shook and that she was lifted approximately four inches off the deck. She testified that she heard “a big boom” and that she fell to the deck with her clothes on fire.
Ms. Foster, in addition to testifying in her own behalf, presented the testimony of other witnesses, including an APCo employee who had investigated the accident, an electrical engineer, and two physicians. These witnesses collectively testified that the stabilizer pipe had contacted two of APCo’s high-voltage .overhead lines, that that contact had blown a fuse in a nearby transformer, and that Ms. Foster had suffered electrical burns that could have been caused by the pipe’s contacting her and one of the lines at the same time. The engineer testified that in his opinion the “big boom” that Ms. Foster heard was caused when the fuse blew.
John Ladnier testified on behalf of APCo that he heard an “explosion” and that he immediately looked over the side of the wheelhouse and saw that Ms. Foster was lying on the deck with her clothes on fire. He testified further that at the time he heard the “explosion,” he had his hands on the stabilizer pipe. He also testified that the pipe was not in contact with any of APCo’s lines at the time that he heard the “explosion” and saw Ms. Foster lying on the deck with her clothes on fire. On cross-examination, portions of Ladnier’s deposition testimony were admitted into evidence; in them he had stated that he did not “believe” that the pipe had come in contact with the lines because, as best he could remember, he “believed” that his *176 hands were on the pipe at the time he heard the “explosion.”
Clay Burroughs, who also appeared on behalf of APCo, testified that he also heard an “explosion.” He stated that Ladnier had his hands on the pipe and that following the “explosion” he saw Ladnier look over the side of the wheelhouse and that he heard him shout that Ms. Foster’s clothes were on fire. Burroughs also testified that the stabilizer pipe was not in contact with any of the lines at the time that he heard the “explosion” and Ladnier’s shouting. Burroughs admitted on cross-examination, however, that he had been watching Ladnier’s hand signals prior to the accident. Burroughs stated that immediately after Ms. Foster was injured, he swung the pipe to his right, where it came in contact with APCo’s lines. He testified that he then dropped the pipe to the ground and that at no time did the pipe come in contact with any of the lines and any individual at the same time. Neither Ladnier nor Burroughs testified as to exactly what Ms. Foster was doing at the moment she was injured. APCo also presented the testimony of an electrical engineer that Ms. Foster’s injuries were not consistent with those that would usually result when one comes in contact with a high-voltage line. The engineer agreed, however, that the stabilizer pipe had come in contact with APCo’s lines, that a fuse had blown, and that a loud noise could have occurred when the fuse blew.
The sole issue presented in this case is whether the trial court erred in denying APCo’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. APCo contends that Ms. Foster’s negligence claim should not have been submitted to the jury because, it argues, the evidence was insufficient to show that it had breached its duty to exercise reasonable care in constructing and maintaining its high-voltage lines at the shipyard or that one of its lines was the proximate cause of Ms. Foster’s injuries. In the alternative, APCo contends that the verdict is against the weight of the evidence and, therefore, that it is at least entitled to a new trial. APCo does not argue that the jury’s award of $1,000,000 in damages was excessive.
Ms. Foster maintains that her negligence claim was properly submitted to the jury on disputed evidence and that the verdict is due to be upheld.

Judgment Notwithstanding the Verdict

Whether the trial court properly denied APCo’s motion for a judgment notwithstanding the verdict turns on whether Ms. Foster satisfied her burden of producing sufficient evidence to show APCo’s breach of the appropriate standard of care and a proximate causal connection between APCo’s breach and her injuries. Before examining the record, we note that this action was pending on June 11, 1987; therefore, the “substantial evidence” rule, Ala.Code 1975, § 12-21-12, does not apply, and the applicable standard of review is the “scintilla of evidence” rule, which has been explained as follows:
“A motion for directed verdict or JNOY is tested against the scintilla rule, which requires that a question go to the jury ‘if the evidence or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint.’ Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). In reviewing a trial court’s ruling on these motions, the appellate court, guided by the standard of the scintilla rule, determines whether there was sufficient evidence below to produce a conflict warranting jury consideration. Baker v. Chastain, 389 So.2d 932 (Ala.1980). Like the trial court, the appellate court must view all the evidence in a light most favorable to the non-moving party. Ritch v. Waldrop, 428 So.2d 1 (Ala.1982).”
Hammond v. City of Gadsden, 493 So.2d 1374, 1376 (Ala.1986).
(a) Breach of the Appropriate Standard of Care
In Alabama Power Co. v. Alexander, 370 So.2d 252, 254 (Ala.1979), this Court stated as follows:
*177 “The duty of one who maintains a power line has been stated as follows:
“ ‘ “The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.” Curtis on Law of Electricity, § 510.’
“Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975); Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228 (1962); Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300 (1954). Electric companies are not insurers of the public’s safety; and the law does not impose strict liability for all accidents involving their power lines. Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975); Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231 (1950).”
In the present case, the parties are at issue over whether APCo should have reasonably anticipated that someone at the shipyard might come in contact with the lines. Ms. Foster contends that APCo should have anticipated human contact with the lines that crossed over the railway and, therefore, that it had a duty to insulate them. On the other hand, APCo maintains that it was under no duty to insulate its lines because 1) uninsulated high-voltage lines are not uncommon; 2) masts and other tall structures were installed on the boats on the bayou side of the lines; and 3) the shipyard had experienced no previous problems with the lines after they were raised to a height of 51 feet. Although all three of these factual contentions are supported by the evidence, we find APCo’s argument unpersuasive.
The evidence showed that APCo raised the lines because a representative of the shipyard had contacted it and had expressed concern that boats passing along the railway underneath them, might come in contact with them. The installation of the stabilizer pipes on the boat on which Ms. Foster was injured was taking place in close proximity to the lines. The boat in question was 90 feet long. Approximately 15 feet of it had not passed under the lines; therefore, approximately 75 feet of it had. The crane that was lifting the stabilizer pipes into position over the wheelhouse was located approximately midship, 10 to 12 feet from the side of the boat. The evidence showed, therefore, that the crane, which had a boom extension in excess of 51 feet, was being operated approximately 30 feet from APCo’s lines to raise 40-foot stabilizer pipes into position atop the wheelhouse, which was 30 feet above the ground. The mast was already in place at the time the stabilizer pipes were being lifted to the top of the wheelhouse. The evidence also showed that cranes with boom extensions in excess of 51 feet were utilized all along the railway on both sides of the lines. Representatives of APCo had viewed the shipyard before, during, and after the installation of the lines at the 51-foot height and were aware of the boat-building operation. Where the facts upon which the existence of a duty depends are disputed, as here, the factual dispute is for resolution by the jury. Where, however, the facts are undisputed, the existence of a duty, under those facts, is a question of law. Alabama Power Co. v. Alexander, supra. The trial court instructed the jury to determine whether APCo should have reasonably anticipated that someone at the shipyard might come in contact with one of the lines. The jury obviously found from the evidence that APCo should have reasonably anticipated human contact with one of its lines; consequently, the jury could find that APCo was under a duty to insulate them. The trial court did not err in denying APCo’s motion for a judgment notwithstanding the verdict on this ground.
(b) Proximate Cause
APCo contends that the evidence was without “selective application” to Ms. *178 Poster’s theory of causation. It argues that it was equally inferable from the evidence that Ms. Foster suffered an electrical shock from the electric arc welder that she was using and, therefore, that the jury’s finding that one of its lines was the proximate cause of Ms. Foster's injuries was based upon pure speculation. We disagree.
The “scintilla of evidence” rule does not vitiate the rule that a conclusion based upon speculation or conjecture as to liability is not a proper basis for a verdict. Matthews v. Mountain Lodge Apartments, Inc., 388 So.2d 935 (Ala.1980). In Evans v. Alabama Power Co., 474 So.2d 1102, 1103-04 (Ala.1985), this Court, quoting Southern Ry. v. Dickson, 211 Ala. 481, 486, 100 So. 665, 669 (1924), stated:
“ ‘As this court has often declared, findings of fact based on conjecture merely cannot be upheld. Southworth, Adm’x, v. Shea, 131 Ala. 419, 30 South. 774 [1901]; Miller-Brent Lbr. Co. v. Douglas, 167 Ala. 286, 52 South. 414 [1910]; John v. Birmingham Realty Co., 172 Ala. 603, 55 South. 801 [1911]; Carlisle v. C. of G. Ry. Co., 183 Ala. 195, 62 South. 759 [1913]; Dorman’s Case, [205 Ala. 609, 89 So. 70] (1921)]. As said in Southworth, Adm’x, v. Shea:
“ ‘ “Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.”
“ ‘But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence, which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.’ ”
In the present case, however, it is undisputed that the stabilizer pipe contacted two of APCo’s high-voltage lines. The evidence, viewed in a light most favorable to Ms. Foster, showed that she came in contact with the pipe at the same time that the pipe came in contact with one of APCo’s lines and that she suffered electrical injuries as a result. APCo’s theory of causation, i.e., that Ms. Foster’s injuries were caused by the electric arc welder, had some support in the evidence, but not enough to warrant a reasonable inference that the welder caused Ms. Foster’s injuries. Although the evidence indicated that Ms. Foster was working in close proximity to the worn spot on the welding machine’s cable at the time she was injured, the evidence did not show that Ms. Foster ever came in contact with that worn spot. Ms. Foster testified that she was electrically shocked when she grabbed the stabilizer pipe. No one else testified as to exactly what Ms. Foster was doing at the moment she was injured. APCo points out that one of Ms. Foster’s medical experts conceded on cross-examination that Ms. Foster’s injuries could have been caused by the welder. A careful review of that witness’s testimony reveals, however, that he simply testified that Ms. Foster’s injuries, being electrical in nature, were consistent with the kinds of injuries that one could sustain by coming in contact with a source of electricity such as the welder.
Because APCo’s theory of causation, although plausible, was not deducible from the evidence as a reasonable inference, it was conjecture only. On the other hand, the evidence does have selective application to Ms. Foster’s theory of causation, i.e., the evidence supports her theory of causation, indicating a logical sequence of cause and effect. The trial court did not err in denying APCo’s motion for a judgment notwithstanding the verdict on this ground.

New Trial

APCo argues that the verdict is against the weight of the evidence. Again, we disagree.
*179 Jury verdicts are presumed to be correct in Alabama. Pepsi-Cola Bottling Co. v. Colonial Sugars, a Division of Borden, Inc., 423 So.2d 190 (Ala.1982). In Hammond v. City of Gadsden, supra, at 1376, this Court stated as follows:
“In reviewing a trial court’s ruling on a new trial motion, based on the weight and preponderance of the evidence, the standard of review guiding the appellate court is whether the trial court abused its discretion in disposing of the motion. Pepsi-Cola Bottling Co. v. Colonial Sugars, a Division of Borden, Inc., 423 So.2d 190 (Ala.1982). The trial court’s decision will not be overturned on appeal unless the evidence ‘plainly and palpably’ shows that the trial court erred in ruling on the motion for new trial. Herrington v. Central Soya Co., 420 So.2d 1 (Ala.1982). The appellate court must view the tendencies of the evidence most favorably to the non-moving party and must indulge such inferences as the jury was free to draw. Cooper v. Peturis, 384 So.2d 1087 (Ala.1980).”
The jury could have concluded from the evidence in the present case 1) that APCo should have reasonably anticipated that someone at the shipyard might come in contact with one of the high-voltage overhead lines (thus imposing a duty on it to insulate the lines); 2) that APCo breached its duty to Ms. Foster by not insulating the lines; and 3) that Ms. Foster’s contact with one of the lines was the proximate cause of her injuries. After carefully reviewing the record, we can find no error in the trial court’s refusal to grant APCo another trial.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.

. "Wheelhouse” is synonymous with "pilothouse,” which is defined in the American Heritage Dictionary of the English Language (1969) as "[a]n enclosed area on the deck or bridge of a vessel from which the vessel is controlled when underway, also called ‘wheelhouse.’ ”