Virginia R. PRICKETT, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. Civ.A. 98–D–937–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 17, 2000.

Charles H. Volz, Jr., Calvin L. Williams, Volz, Prestwood & Hanan, P.C., Montgomery, AL, for plaintiffs.

R. Randolph Neeley, Redding Pitt, U.S. Attorney's Office, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

This matter arises from a fall sustained by Plaintiff Virginia Prickett ("Plaintiff" or "Virginia Prickett") while an invitee on the premises of Defendant's Central Alabama Veterans Administration Hospital, East Campus ("V.A."). Plaintiff contends that Defendant negligently maintained its premises, specifically, a wheelchair, and caused the accident resulting in Plaintiff's injuries. A bench trial was held in this matter on November 22 and 23, 1999. After careful consideration of the testimony and exhibits presented to the court, all applicable law, and the record as a whole, the court finds that Plaintiff has not proved that Defendant performed its duties negligently and, thus, did not cause or contribute to Plaintiff's injuries. Accordingly, the court finds that judgment is due to be entered in favor of Defendant.

## JURISDICTION

Based upon 28 U.S.C. § 1331 (federal question jurisdiction), § 1346 (United States as a Defendant), and § 2671 et seq. (Federal Torts Claim Act), the court exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

1. Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v.*

## STANDARD OF REVIEW

■ The burden of proof in civil cases is the same regardless of whether the finder of fact is a judge in a bench trial or a jury. *See Cabrera v. Jakabovitz,* 24 F.3d 372, 380 (2d Cir.1994). That is, a plaintiff bears the burden of satisfying the finder of fact that he or she has proven every element of his or her claim by a preponderance of the evidence. A preponderance of the evidence means such evidence that, when considered with the opposing evidence, has more convincing force, and demonstrates that what is sought to be proved "is more likely true than not true." *Pattern Jury Instructions,* Basic Instruction No. 6.1, U.S. Eleventh Circuit District Judges Association (Civil Cases) (1999).

■ In bench trials, the judge serves as the sole fact-finder and, thus, assumes the role of the jury. In this capacity, the judge's function includes weighing the evidence, evaluating the credibility of witnesses, and deciding questions of fact, as well as issues of law. *See Childrey v. Bennett,* 997 F.2d 830, 834 (11th Cir.1993) (holding that "it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony").

■ Moreover, "a trial judge sitting without a jury is entitled to even greater latitude concerning the admission or exclusion of evidence." *Goodman v. Highlands Ins. Co.,* 607 F.2d 665, 668 (5th Cir.1979) (citing *Wright v. Southwest Bank,* 554 F.2d 661 (5th Cir.1977)); [1] *see also Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 776 n. 5 (11th Cir.1982) (stating that the court has "broad discretion over the admission of evidence in a bench trial").

## FINDINGS OF FACT

Virginia Prickett married Mr. Prickett in 1940. Mr. Prickett became ill in the early 1990s, suffering from Alzheimer's disease. Plaintiff took Mr. Prickett to the V.A. because she could no longer care for

*City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

him. She admitted him to Ward 44 East, a geriatric or mental ward.

After admitting her husband to the V.A., Plaintiff visited him every day. Plaintiff would arrive around 9:30 a.m., when visiting hours started. Because Ward 44 is a locked ward, she would go to the ward, ring the bell, and an orderly would bring her husband to her in either a wheelchair or a reclining geriatric chair ("geri-chair"). Then, she would push him to the visiting room where she would often shave him, wash his feet, and help him eat his lunch. When he was able, Plaintiff would help Mr. Prickett get on a couch, but other times he had to remain in his chair. When they were done visiting, Plaintiff would take Mr. Prickett back to the ward in his wheelchair or geri-chair.

On Monday, December 4, 1995, Plaintiff went to the V.A. around 9:30 a.m. She rang the door of the locked ward and orderlies brought Mr. Prickett out to her in a geri-chair. She then pushed him to the visiting room, helped him get on the couch, and put the geri-chair off to the side of the room. After their visit, Plaintiff went to get the geri-chair. As she did, the back of the geri-chair gave way and knocked Plaintiff to the floor. As she lay on the floor, she saw a pin laying near the geri-chair.

Mr. Prickett was very alert that day, and he went to the door and summoned a passing worker. Plaintiff was in pain, but did not scream until she was put on a board to carry her to the hospital. Plaintiff was then taken to the main V.A. hospital for an x-ray. Doctors told her that her hip was broken. She was admitted to Jackson Hospital and stayed for about 10 days. While at Jackson, Dr. Thornberry operated on Plaintiff. He told her that she needed a hip replacement. Plaintiff heeded Dr. Thornberry's advice and underwent a hip replacement operation. After her operation, Plaintiff went to rehabilitation for almost two weeks. Since that time, Plaintiff has visited Dr. Thornberry periodically.

The V.A. Hospital provides medical care to all veterans, without any preconditions.

At the time of Plaintiff's accident, visitors to Ward 44 were allowed in the visiting area, but not in the ward itself. Visitors were allowed in the locked ward area only if they had a specific reason to enter it and were escorted by staff. Ordinarily, visitors would ring the bell, and the patient would be brought out of the ward by a nursing assistant. While staff would sometimes stay in the visiting room with the patient and visitor, no rule required them to stay.

Generally, if the nursing assistant used a geri-chair to bring the patient out of the ward, the chair would be yielded to the visitor and the patient. Visitors were allowed to use the chairs in such a manner that the visitor would sometimes push the patient back and forth from the ward to the visiting area. The V.A. staff was aware that visitors sometimes pushed the chairs.

When the V.A. received geri-chairs, they arrived in a delivery truck and were unloaded into a warehouse. They came fully assembled in a large cardboard box. V.A. employees in the warehouse only had to take the geri-chairs out of the box; no assembly was required. Further, no one in the warehouse unit was assigned to inspect chairs upon arrival. Indeed, the V.A. had no policy regarding the inspection of newly arrived equipment.

The geri-chairs resembled typical wheelchairs, except they could operate as recliners. A handle on the back of the chair was attached by cable to a hydraulic shaft, or gas cylinder, on the lower backside of the chair. Squeezing the handle on the back of the geri-chair would cause the back to lower. Alternatively, one could push or pull the back down without using the handle. When the chairs arrived at the V.A., their backs were upright, and they were ready to be used. When in an upright position, the chair's back was held up by two pins located at the top and bottom of the hydraulic shaft. The two pins themselves were held in place by clips or cotter pins.[2] A geri-chair will collapse if either of the two pins is removed.

2. To clarify, when the court refers to a "pin," the court means one of the two pins in the

On Ward 44, the geri-chairs were used to transport patients. At times, some of the chairs were out of service because pressure on the handle would not lower the chair. To lower the chair, nurses would grab the back of the chair and manually pull down the back. The back would only go down to about a 45 degree angle.

No single staff person in Ward 44 was responsible for inspecting newly arrived equipment. Every staff member could put a chair out of service if he or she determined that the chair was inoperable. However, when a handle was broken, the chair could still pull back. Thus, a staff person would not deem a chair unsafe simply because the chair's handle did not work. Chairs were only viewed as unsafe by the Ward 44 staff when the legs were bent and broken.

Jacklyn Johnson ("Johnson") works at the V.A. In 1995, she was head nurse in Ward 44. At times when the chairs needed to be repaired, she would send them to maintenance. Johnson took responsibility for inspecting new chairs. When chairs were not operating as she thought they should, Johnson considered them dangerous. Yet, no one in Ward 44 checked chairs regularly to see if they were properly maintained.

Prior to the day of the accident, Johnson called maintenance about 7 or 8 times every year because she thought the chairs could be dangerous to patients. Further, while she was head nurse, Johnson called the engineers about every 2 months to have them look at the chairs.

Billy Bowens ("Bowens") works at the V.A. In 1995, he worked as the industrial equipment manager. He testified that, in order to get a geri-chair to a horizontal position, at least one of the pins on the gas cylinder would have to be removed. After her fall, Plaintiff noticed a pin lying on the floor near the chair, but did not notice a cotter pin or clip. After Bowens heard about Plaintiff's injury, he examined the chair in question. He noticed that a pin

was missing from the top of the cylinder. By the time he examined it, the chair had been moved to the day room from the visitor's room.

Henry Torrance ("Torrance") was Bowens' supervisor. Torrance is a supervisor at the V.A. and he is familiar with geri-chairs because he received frequent calls on these chairs needing repair. As supervisor, Torrance oversaw the maintenance and repair of various equipment, including geri-chairs, though he did not always know of the specific problem with each repair. He does feel that the hydraulic cable which helped lower the back could have been a problem on a geri-chair. Further, if the cable was loose or stretched, the cotter pins and the pins in the hydraulic shaft would likely have to be removed to allow repair. However, Torrance does not recall any occasion when he or his employees were asked to fix a stretched cable or a hydraulic cylinder. He is also not aware of any occasion when a cotter pin was repaired.

Prior to December 4, 1995, Plaintiff had no problems with the chair in question, other than the fact that it was heavy. She was never told not to use the chair. She never used the handle on the chair for the recliner, and she never operated any of the mechanical equipment on the chair.

Before December 4, 1995, Plaintiff did not have any serious physical problems. Since the fall, however, her health problems have intensified.

Plaintiff brings her claim under the Federal Torts Claims Act ("FTCA"), 28 U.S.C § 1346. The FTCA provides that the tort law of the state where the act or omission occurred governs liability. *See* 28 U.S.C. § 1346(b); *Bettis v. U.S.*, 635 F.2d 1144 (5th Cir.1981); *Edwards v. U.S.*, 497 F.Supp. 379 (M.D.Ala.1980). It is undisputed that the alleged acts or omissions of the defendant occurred within the State of

hydraulic shaft. Conversely, when the court refers to a "cotter pin" or "clip," the court means the "clip" which holds the "pin" in place.

Alabama. *See Ross v. U.S.,* 640 F.2d 511, 518–19 (5th Cir.1981).

## DISCUSSION

█ Plaintiff has brought this action against Defendant United States of America, alleging that Defendant negligently maintained the wheelchair which caused Plaintiff's injuries. Negligence means "the failure to discharge or perform a legal duty owed to the other party." *Alabama Pattern Jury Instructions,* Civil 28.00 (1993). Therefore, it is "the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or, the doing of something which a reasonably prudent person would not have done under the same or similar circumstances." *Alabama Pattern Jury Instructions,* Civil 28.01 (1993). To establish negligence, Plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Martin v. Arnold,* 643 So.2d 564, 567 (Ala.1994) (citing *Albert v. Hsu,* 602 So.2d 895, 897 (Ala.1992)). The court now applies the law to the facts in order to determine whether Plaintiff has established her negligence claim against Defendant.

### A. Duty

█ "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." *Thompson v. Mindis Metals, Inc.,* 692 So.2d 805, 807 (Ala.1997) (citations omitted). Whether a duty arises in a particular case is typically a question of law. *Garner v. Covington County,* 624 So.2d 1346, 1350 (Ala.1993). Because Plaintiff was a business invitee, Defendant owed her a duty to "exercise reasonable care in maintaining [its] premises in a reasonably safe condition." *Bishop v. South,* 642 So.2d 442, 445 (Ala.1994).

### B. Breach

█ Once it is shown that a defendant owes a duty to a plaintiff, the plaintiff must show that the defendant breached that duty. *See Flagstar Enterprises, Inc.*

*v. Davis,* 709 So.2d 1132, 1139 (Ala.1997). Whether a breach of a duty has occurred is generally a question for the trier of fact. *See Dale v. Kelly,* 620 So.2d 632, 634 (Ala. 1993).

The facts adduced at trial show that a pin came loose from the hydraulic shaft on the geri-chair at issue, causing the back to fall and knock over Plaintiff. Plaintiff has no direct evidence, however, of how the pin came to be in a condition whereby it could fall out. In other words, Plaintiff cannot directly prove that Defendant breached its duty to maintain the chair in a reasonably safe condition. Therefore, Plaintiff relies exclusively on the doctrine of res ipsa loquitur to prove that Defendant breached its aforementioned duty.

█ Meaning "the thing speaks for itself," the doctrine of res ipsa loquitur allows a plaintiff to prove negligence by using circumstantial evidence. *See Khirieh v. State Farm Mut. Auto. Ins. Co.,* 594 So.2d 1220, 1223 (Ala.1992).

> The function of the doctrine is to supply a fact which must have existed in the causal chain stretching from the act or omission of the defendant to the injury suffered by the plaintiff, but which the plaintiff, because of circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed.

*Alabama Power Co. v. Berry,* 254 Ala. 228, 48 So.2d 231 (1950). For a plaintiff to avail herself of the doctrine, the instrumentality or act which caused the injury must be known. *Id.* Once that is shown, a plaintiff must establish three elements: (1) the defendant was in full control of the instrumentality which caused the injury; (2) the plaintiff's injury resulted from the accident; and (3) the circumstances are such that according to common experience the accident could not have happened if those having control of the instrumentality had not been negligent. *See Ward v. Forrester Day Care, Inc.,* 547 So.2d 410, 411 (Ala.1989).

In this case, it is clear that the pin which fell out of the hydraulic shaft caused the

back of the chair to fall, thereby knocking Plaintiff over. What is unclear from the facts is how the pin came to be loose and unsecured. Plaintiff asserts that the pin likely came loose when the geri-chair was repaired. Because there is no direct evidence of such, Plaintiff relies on the doctrine of res ipsa loquitur to establish that Defendant must have negligently repaired the chair, causing the pin to come loose. Accordingly, the court now turns to the three elements necessary to establish res ipsa loquitur.

1. Was the instrumentality in Defendant's control?

■ The element of control is meant to examine whether all of the possible, reasonable causes were under the control of the defendant. *See Khirieh*, 594 So.2d at 1224. Defendant argues that Plaintiff cannot meet this element because the geri-chair was routinely used by patients and visitors and was out of Defendant's control during those times. Defendant suggests that any patient or visitor could have tampered with the pins and cotter pins in the hydraulic shaft. According to Defendant, this is as likely an explanation for the accident as Plaintiff's theory of negligent repair. For the reasons that follow, the court disagrees and finds that the control element is met.

■ First, the court notes that the control requirement is not meant to be a literal test of whether the instrumentality ever left the control of the Defendant. Instead, the control requirement is meant to examine whether Defendant's negligence caused the accident. *See id.* Here, the geri-chair was given to Plaintiff by Defendant. When not in use, the chairs in Ward 44 were kept in a locked area.

Second, the only evidence in the record regarding any touching or tampering with the chairs outside of their regular use is the testimony regarding the repair of the chairs. While the court concedes that Defendant's alternative explanation of patient

tampering is possible, the court finds it remote at best. Instead, the court finds that the possible causes of the pin coming loose and releasing the back of the chair were while the chair was in the exclusive control of the Defendant.

2. Did Plaintiff's injury result from the accident?

The parties do not contest, and it is clear from the evidence that Plaintiff's injuries resulted from the accident.

3. Do the circumstances suggest negligence?

While the doctrine of res ipsa loquitur allows one to prove negligence through circumstantial evidence, "[i]f one can reasonably conclude that the accident could have happened without any negligence on the part of the defendants, then the res ipsa loquitur presumption does not apply." *Ex parte Crabtree Indus. Waste, Inc.*, 728 So.2d 155, 158 (Ala.1998). Put another way, the facts of the case must suggest negligence.

Plaintiff contends that the evidence supports an inference of negligence. She argues that because the missing pin is the known instrumentality which caused the accident, the only inference the court needs to make is that Defendant's negligence caused the pin to fall out. However, the court disagrees.

Plaintiff's theory of recovery requires the court to make at least four inferences. First, the court must infer that the geri-chair which injured Plaintiff was, in fact, broken at one time. Second, the court must infer that this chair was then taken for repairs. Third, the court must infer that those repairs involved the pin and cotter pin. Fourth, the court must infer that Defendant was negligent in its repairs, causing the pin to eventually fall out.

■ The court notes that according to federal law there is no prohibition against pyramiding inferences, so long as the inferences are reasonable.[3] *Daniels v.*

---

**3.** Alabama's rule against pyramiding inferences concerns the sufficiency of the evi-

*Twin Oaks Nursing Home,* 692 F.2d 1321, 1324 (11th Cir.1982). The court has no difficulty in reasonably inferring that the chair in question may have been broken and in need of repair.[4] Where Plaintiff's case falls short, however, is in the inference that this repair necessarily involved the pin and cotter pin. In fact, the only evidence in the record regarding repairs on the chairs at the V.A. reflects that none of the repairs involved the pin and cotter pin. On the occasions he worked on geri-chairs, Bowens never had the opportunity to repair either the cable or the pin and clip. Further, Torrance cannot recall any occasion where the hydraulic cylinder or any or its attachments were repaired. Because the only evidence in the record addressing this third inference actually goes against a finding of the fact to be inferred, the court finds that it cannot reasonably conclude that Defendant was negligent.

Because the court cannot reasonably infer that Defendant affected the pin and cotter pin on the geri-chair which fell on Plaintiff, the court cannot conclude that Defendant was negligent. In short, the court finds that the evidence here does not support an inference of negligence. Plaintiff's claim relying on res ipsa loquitur must therefore fail. Consequently, after carefully reviewing all of the evidence presented, the court cannot find by a preponderance of the evidence that Defendant breached its duty to Plaintiff.

## CONCLUSION

After careful consideration of the evidence presented during the trial of this matter, and the applicable case law, the court finds that Plaintiff has not proved by a preponderance of the evidence that Defendant United States of America was negligent in the maintenance of the geri-chair which injured Plaintiff Virginia Prickett.

Having found the issues in favor of Defendant, a judgment in accordance with this Memorandum Opinion shall be entered separately.

dence, is procedural and not substantive, and, therefore, is supplanted by federal law under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Daniels,* 692 F.2d at 1323 (citing *Boeing Co. v. Shipman,* 411 F.2d 365, 368–78 (5th Cir.1969) (en banc)).

4. Despite Henry Torrance's testimony that the chair in question was relatively new, the court finds these two inferences are reasonable because of the frequency with which the geri-chairs needed repair.